D. F. AYERS ET AL. V. T. N. WAUL.

1. MISTAKE IN ENTRY OF JUDGMENT.—A mistake in the entry of an order approving a claim against an estate, whereby such claim is ranked as of the third instead of the fifth class, will not vitiate the order where the recitals correct the mistake.
2. JUDGMENT LIEN.—A judgment lien is not affected by a stay of execution issued in favor of creditors whose claims accrued subsequent to the judgment and issuance of execution.
3. SAME.—Such lien is preserved by the issuance of execution within twelve months after the rendition of the judgment.
4. SAME.—CLAIMS AGAINST AN ESTATE.—The lien springs from the judgment by operation of law, and the allowance and approval of the judgment against the estate carries with the approval the enforcement of the judgment lien existing by law in its favor.
5. APPROVAL OF JUDGMENT, EFFECT OF.—The approval of a judgment attaches its lien upon all lands in the county where rendered without further description of the lands.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

On the 12th February, 1872, T. N. Waul recovered a judgment in the District Court of Washington county against John Schackey and C. Hueske for the sum of $1,816.70.

On this judgment execution issued 30th April, 1872, on which is indorsed "Returned, held up by order of plaintiff's attorneys," May 27, 1872.

C. Hueske died November 10, 1872. February 10, 1874, a copy of the judgment, duly sworn to, was presented to the administrator and allowed for $1,531.44.

At the March Term, 1874, on the application of T. N. Waul to have the claim approved and classified by the court as a secured claim, the appellants filed their opposition thereto—

1st. Because the plaintiff had lost his judgment lien by directing the sheriff to hold up the execution issued on his judgment.

2d. Because the affidavit to said claim does not set up any such lien.

3d. Because the administrator's allowance does not cover such lien.

4th. Because there is no data upon which to predicate the judgment awarding such lien.

5th. Because no such judgment of approval can be awarded by the court without an affidavit setting up the lien and allowance thereof by the administrator.

6th. Because the affidavit and allowance should not only have set out the lien, but should have designated and described the particular lands upon which the lien was claimed.

Upon which the court rendered judgment, " that the said objections be and they are hereby overruled and dismissed, and that the same be and the same is hereby approved for the sum of fifteen hundred and forty-eight and $\frac{44}{100}$ dollars. * * * And the said F. Hueske is hereby ordered to pay the same in due course of administration; and further, that said claim be and the same is hereby classed of the third class, it being secured by judgment lien upon the lands owned by said deceased at the rendition of said judgment, lying in Washington county, subject to execution."

To this judgment Ayres and others excepted, and gave notice of appeal.

*Sayles & Bassett,* for appellants.

The appellants, creditors of the estate of Hueske, insist that the judgment of the court below was erroneous.

I. In classifying the claim as a third-class claim, (claims having express special liens,) when the only preferred class to which it could by any possibility be assigned was the fifth class, (claims secured by judgment liens.)

In regard to this, a simple reference to the statute, probate law, sec. 206, will be sufficient. If the claim was entitled to any priority at all, it was of the fifth class, as a claim with judgment lien, and not of the third class, having a special (express) lien.

II. But we insist that the claim was entitled to no priority whatever, and should have been ranked simply as a sixth-class claim.

1. The evidence shows that after procuring his judgment in February, 1872, and an execution to be issued thereon April 30, 1872, the appellee directed the execution to be held up by the officer, and it was so returned, and never afterwards reissued, and the appellants' debts were contracted while the execution was thus held up.

For the purposes of this case, it will be immaterial whether this court shall hold that the stay of the execution operated wholly to forfeit the lien, or only to forfeit the priority which the party might otherwise have had over other creditors.

We insist that good faith and fair dealing require, that a party should be estopped to assert a priority of lien over creditors who have been induced to extend credit on the faith of the debtor having large landed property unincumbered, so far as the County Court records show. The judgment lien is not recorded, and a party who fails to use all the diligence which the law gives him to enforce his judgment lien by executions issued and pressed to sale, is chargeable with laches which ought to estop him from asserting his lien against those who have been thereby induced to act to their prejudice by extending credit to the judgment debtor.

This precise question has not, so far as we are aware, been passed upon by our courts, but the principle appears to be analogous to the familiar case of a surety for the defendant, who is held released by the plaintiffs directing a stay of execution, whereby the surety is prejudiced.

III. We further insist that no lien should have been approved by the court, because none was claimed in the affidavit or allowed by the administrator.

The probate law requires the claim to be verified by affidavit, section 182, and presented to the administrator, who is required to indorse his acceptance or rejection thereon,

section 187 ; it may be accepted in part and rejected in part, sections 187, 191 ; if allowed, it must be filed with the clerk, section 190 ; and at the next term examined by the court, and approved or disapproved by an order duly entered, section 192 ; any person interested in the estate may appear and contest the approval, section 195 ; the order of approval has the force and effect of a judgment, section 197 ; it is made the duty of the administrator to report to the court a list of all judgments and special liens presented to him for allowance, section 200 ; and all claims are required to be classified according to their respective priorities, section 192.

What constitutes the "claim" thus spoken of by the statute, and in regard to which all these proceedings are to be had? Clearly, as it appears to us, it must embrace all the grounds upon which the creditor bases his right—the debt, with all its incidents.

Repeated decisions of this court have settled the doctrine, that under our former probate laws, (substantially the same in this respect as the existing law,) a mortgage was a "claim for money" within the meaning of the act, and required to be verified by affidavit, and allowed and approved. (Graham *v.* Vining, 1 Tex., 639; Danzy *v.* Swinney, 7 Tex., 625; same case, 11 Tex., 94; same case, 12 Tex., 43; Robertson *v.* Paul, 16 Tex., 472.) No reason occurs to us for applying a different rule to a judgment lien, and we presume it will be conceded that the same rule does apply.

No pleading, in the technical sense, is required in the presentation of a claim for allowance and approval; but still the facts must be brought before the court in some proper form to call for an adjudication of the right which is claimed. The allowance by the administrator cannot extend beyond the claim made by the creditor in his affidavit; nor can the approval of the court extend beyond the allowance made by the administrator. *Ex vi termini*, an approval must operate on and be limited by something already done by another.

For instance, if a claim is presented to the administrator for a specific amount, and he should allow a part of it and reject the balance, the Probate Court could not go beyond such allowance and approve for a greater amount. If the creditor would establish his claim for a greater amount than the administrator has allowed, he must bring his suit for that purpose.

So, if the creditor verifies his claim with a lien, and demands the allowance of it, the administrator clearly has the power to allow the money demand, and to reject as to the lien, and in such case the creditor could only seek the enforcement of his lien by a suit on the civil side of the docket, and the Probate Court, as such, could not approve what had not been allowed by the administrator.

True, the "classification" of claims is to be made by the court, (or clerk now,) but the facts upon which such classification is to be made must be brought before the court by a claim therefor in the creditor's affidavit and the administrator's allowance.

And the best of reasons exist why such should be the rule. The approval of a claim by the court is a proceeding *in rem*, which has the force and effect of a judgment, and is binding upon all the world. Yet it is wholly *ex parte*, and facts may exist within the knowledge of the administrator or others interested in the estate, by which the lien claimed would be discharged, although the debt, as a simple money demand, might still constitute a valid claim against the estate. The lien, for instance, may have been expressly released ; or it may have been lost by failure to issue execution within twelve months after the rendition of the judgment. To allow the lien to be established without any provision for notice, actual or constructive, to those interested adversely, would be a departure from the sound and salutary rule adopted in all analogous cases. The parties interested, whether administrator, heirs, or creditors, ought not to be

deprived of an opportunity to resist the establishment of the lien, nor be driven to a bill of review to set it aside.

The rule established by the court below renders nugatory the requirements of section 200 of the probate law. If the administrator is not apprised that a lien exists and is claimed, how is he to report it?

If we attempt to apply the practice to claims of other classes, the absurdity of it will be still more apparent. Take, for example, a claim for expenses of last sickness, medicines, medical attendance, or servants' wages. Claims for such service, etc., may belong to either the second or sixth class, according as they were or were not rendered during the last sickness. Would the creditor be permitted, upon a claim for such services, etc., made out and verified in the ordinary form, not specifying that they were rendered in the last illness, and upon the administrator's allowance in general terms, be permitted, on his *ex parte* exhibition of such a claim to the court, without claim, affidavit, or other notice to those adversely interested, to procure an order of the court classifying his claim as of the second class? To state the proposition is, as it appears to us, to refute it.

It has been repeatedly decided by this court that a party having a lien may be held to have waived it and be estopped from availing himself of it by failing to assert it at the proper time. Thus in Johnson *v.* Murphy, 17 Tex., 217, a party was held to have waived a mortgage lien by failing to foreclose it in a suit on the note; in Cook *v.* Love, 33 Tex., 487, and Gentry *v.* Lockett, 37 Tex., 503, attachment liens were held to have been lost by the failure to foreclose them in the judgments; in Toland *v.* Swearingen, 39 Tex., 446, the same rule was applied to the lien of a distress warrant. And so we say here that the failure to claim, to prove up, and to procure the allowance of the lien was a waiver on the part of the appellee of any lien which may have existed, and authorized the administrator and others interested to

presume that no attempt would be made to assert a lien on the presentation of the claim for approval.

IV. No description whatever of the lands claimed to be subject to the lien is contained in any part of the proceedings down to and including the judgment, which purports to embrace "all the lands owned by said deceased, at the rendition of said judgment, lying in Washington county, subject to execution."

Under section 197 of the probate law the order of the court approving and classifying the claim is to have the force and effect of a judgment; here it has the force and effect of the foreclosure of a judgment lien ; but upon what is it to operate? Shall it be concurrent with other possible liens, or shall it have priority over them or be subject to them? If it would be held subject to the liens of the same or other classes, then those entitled to priority might feel no disposition to contest the establishment of it. But it would be very unsafe for them to rely upon any such assurance.

This judgment, although *ex parte*, is a proceeding *in rem*, and is binding upon all the world. Unless reversed on appeal, or set aside on bill of review, it must take precedence of all other liens subsequently established, of whatever class, whether special liens by prior mortgage or deed of trust, or earlier judgment liens, or even the vendor's lien.

Not only so, but it is to operate throughout a whole county, and upon everything, (without specifying what,) excepting one thing only, to wit, exempt property, the character and extent of which are not, however, ascertained and are practically unascertainable by any mode provided in the judgment or recognized by law. We look in vain through the chancery precedents for any instance of a foreclosure so sweeping in character. In Pressley *v*. Testard, 29 Tex., 199, this court reversed a judgment of foreclosure by *nihil dicit* on a withdrawal of answer, because of the insufficiency of the description of the property, the descrip-

tion being " all of lot 43 and part of lot 90 in the town of Brenham."

In Hurt *v.* Moore, 19 Tex., 269, a judgment of foreclosure was reversed because it did not contain an intelligible description of the land ordered to be sold. But in that case the description was certainty itself when compared with the terms of this judgment. The court in that case say : " The description of the land ought to be such that the sheriff may ascertain with certainty, without relying on the plaintiff for information, upon what he is to levy the execution." " If he were to attempt its execution according to the description which the plaintiff might give, he would incur a risk to which it would be unreasonable to subject him." The rule ought to apply with equal force to the case of an estate and its administrator. Yet here the judgment is a sort of roving commission which licenses and requires the administrator, in satisfaction of the debt, to sell all the real estate which the defendant owned in the county at the date of the judgment.

*Giddings & Morris*, for appellee, cited Parker *v.* Nations, 33 Tex., 210; Jenkins *v.* McNeese, 34 Tex., 189; Trigg *v.* Moore, 10 Tex., 199; Simpson *v.* Reily, 31 Tex., 302; Danzey *v.* Swinney, 7 Tex., 625.

REEVES, ASSOCIATE JUSTICE.—It is not denied that the appellee recovered a judgment in the District Court of Washington county against John Schackey and C. Hueske, nor that the judgment was a lien on the real estate of the judgment debtors situated in the county where the judgment was rendered at the time of its rendition. But it is contended by appellants, who are also creditors of the estate of C. Hueske, that the judgment in the case appealed from is erroneous—

1. In classifying the claim of appellee as a claim of the third class.

The evidence of the claim was the judgment against Schackey and Hueske, recovered by the appellee in 1872. Hueske died in November, 1872, and the claim was allowed by his administrator, and approved by the court, as a claim of the third class, with a lien on the lands owned by the deceased in Washington county from the date of the judgment. If the judgment was a lien on the lands of the deceased, as held by the court, it was a claim of the fifth class. The mistake, however, is corrected by the other recitals in the judgment.

2. In adjudging appellee's claim to have priority over the claims of appellants, because the lien of the judgment was lost by the holding up of execution by the plaintiff therein, and because the affidavit claimed no lien, and the administrator had not allowed or passed upon the question of lien.

The witness, J. D. Giddings, states that no stay of execution was ever given, because the proposition to stay it was not complied with by the defendants, and that the indorsement on the execution, that it was held up by plaintiff's attorney, was not signed because of the reasons above stated.

It is not regarded as material to the rights of appellants whether the execution was stayed or not. Their claims accrued after appellee had obtained his judgment and after the indorsement on the execution. It was not shown that appellants extended credit to the deceased on the faith of his real estate, or that it was unincumbered. The law in force at the time the judgment was obtained did not require that a transcript of the judgment should be recorded, in order to preserve a lien on the real estate of the debtor in the county where the judgment was rendered. The lien was preserved by the issuance of execution upon the judgment within one year, as required by the statute. (Paschal's Dig., art. 7005.)

The affidavit to the claim does not in express terms assert a lien, though it is accompanied by a certified copy of the judgment, which was approved by the administrator and

allowed by the court as a claim having a lien on the lands of the deceased situated in Washington county. The lien is not collateral to the judgment, but springs out of it by operation of law, being evidenced by the judgment itself. It might have been enforced during the lifetime of the debtor by execution on the judgment, and since his death it may be enforced by complying with the requirements of the statute regulating the administration of estates. The statute requires the claim to be verified by the affidavit of the claimant and approved by the administrator and allowed by the court. It is also made the duty of the administrator to report to the court a list of all judgments and special liens presented to him for allowance. The statute further provides that judgments rendered against the deceased in his lifetime, which are liens on the real property of the estate, shall be classed and have priority of payment as claims of the fifth class, so far as the same can be paid out of the proceeds of the sales of such real property. (Paschal's Dig., art. 5674.)

The assertion of the lien in the affidavit would add nothing to the judgment that it did not already have. It does not appear that the lien had been waived. It is shown that the application for the approval and classification of the claim asserting the lien by appellee, and the objection thereto by appellants, was the matter at issue between the parties. The judgment approving the claim recognized the lien, and, after classifying the debt, ordered it to be paid in due course of administration.

The remaining objection is that no description or data were furnished by which to designate the lands claimed to be subject to the lien, &c.

The statute does not designate what particular lands are subject to the lien. It only provides that a final judgment shall be a lien on all the real estate of the judgment debtor situated in the county where the judgment is rendered from the date of the judgment. The probate act provides for the

payment of such judgments out of the proceeds of the sales of the real property subject to the lien.

It was not necessary that the lands subject to the lien should be described on an application for the approval and classification of the claim, as would be required on an application for the sale of the land to pay the debt.

The judgment is affirmed, as establishing a claim of the fifth class.

AFFIRMED.