## LEWIS BALL ET AL. V. JAMES A. HILL, ADM'R.

1. LIMITATION—VENDOR'S LIEN—SET-OFF—JUDGMENT ON NOTE NO WAIVER OF LIEN.—Application was made by an administrator de bonis non, in the Probate Court, for an order of sale enforcing the vendor's lien for the payment of a claim allowed and approved during a former administration, and which at the time of its approval was owned by a firm, one of the members of which was surety on the bond of the administrator who had allowed the claim. The widow and children resisted the application, alleging that the first administrator had squandered the property of the estate, was insolvent, and was owing the estate; that the claim was assigned to the plaintiff with full knowledge of all the facts; also pleaded limitation of three and five years; that the land was the homestead of the family, &c.: Held—

  1. That the plea of adverse possession is not applicable to a moneyed demand.

  2.. A proceeding to set off a claim for unliquidated damages against one member of a firm, in a suit by the firm, is not within the jurisdiction of the Probate Court.

  3. The facts alleged are insufficient to invalidate a transfer of the claim by the firm pending the administration in which the alleged liability of the surety on the bond was incurred.

  4. That suit has been brought and judgment obtained on a vendor's-lien note, is not, of itself, an abandonment or waiver of the vendor's lien; nor is the failure to set up the lien in the affidavit authenticating a claim against an estate, or in the allowance or approval of such claim, a waiver.

  5. It seems that while the debt is not barred by limitation, but still remains in force, the lien, unless waived or abandoned by other act, is still in force.

APPEAL from Walker. Tried below before the Hon. J. R. Burnet.

The judgment appealed from was rendered at the July Term, 1874, of the District Court, on the probate side, on an application for the sale of certain lands belonging to the estate of which appellee was administrator *de bonis non*. The widow and children resisted the application; decree was rendered ordering sale; and the widow and children appealed. A full statement of the case is given in the opinion.

*Randolph & McKinney*, for appellants.—Appellee, as administrator *de bonis non* of the estate of G. H. Ball, deceased, applied to the court below for an order to sell the homestead occupied by appellants, minor children and heirs of said Ball, to satisfy a note which he averred had been given in part payment of said homestead. The appellants answered by general denial, and by various special pleas. Verdict and judgment were rendered against appellants, from which they have prosecuted this appeal, assigning as error—

First. The ruling of the court, in sustaining exceptions to appellants' amended answer, alleging, among other things, that if the administrator had discharged his duty, the note would not only have been promptly paid out of the general assets of the estate, but a handsome property, including the homestead, would have been saved to appellants; that the payee and first indorsee of the note were sureties of the administrator, and holders and owners of the note, without claiming lien, for fifteen years; and that during this protracted administration appellants were minors, the eldest of whom arrived at majority just in time to behold the general wreck of his father's estate, and to learn that the administrator had become a non-resident, and himself and sureties hopelessly insolvent; and that the indorsee had innocently assigned the note to the appellee, who, for the first time in this long lapse of years, claimed that it operated as a lien on the homestead of appellants. It is not charged, in said amended answer, that the administrator acted corruptly, but it is claimed that it was his duty, under the statute, to have

sold property and paid off the debts, instead of holding it, as he did, from 1858 to 1865, when the greater part of it was lost by the emancipation of the slaves. It is also claimed that he paid parties illegally more money of the estate than would have been required to settle the note sued on in this cause, with funds which ought to have been appropriated to the payment of the note, the only legally-established claim against the estate. Under this state of facts, is there a court of equity in all the land that would have allowed either the payee or the first indorsee to have enforced the lien ? Does the appellee, who purchased with notice, according to the allegations of the answer, occupy any better position ? The note, however, never having become a negotiable one, is subject, in his hands, to every defense which it would have been in the hands of any previous owner. (Paschal's Dig., art. 222.) Now, if it be true that the lien of the vendor is strictly an equitable one, and that he who seeks equity must do equity, then ought a court of equity to permit the appellee to enforce his lien against the homestead of appellants, without first placing them in the same condition which they would have occupied had the administrator discharged his duty in accordance with the provisions of the statute and the terms of his oath and bond ?

The second error assigned, is the ruling of the court in sustaining exceptions to second amended answer, alleging that they and their father had occupied the homestead under deed which acknowledged the receipt of the purchase-money, and which contained covenant of general warranty, for more than fifteen years, and simply set up the statute of limitation of three and five years, exclusive of the time of the suspension of the statute by the State Constitution. The court below, it is supposed, sustained the exception on the ground that neither the vendee nor his heirs could plead the statute of limitation against his vendor. While the statute does not specially mention vendors, its language—"shall be held to have full title, precluding all claims"—is sufficiently broad to

include them.   The Supreme Court of the United States, in
the case of Boone *v.* Chiles, 10 Pet., 223, uses this language:
"A vendee in fee derives his title from the vendor; but his
title, though derivative, is adverse to that of the vendor; he
enters and holds for himself."   The principle of law, as
recognized in the case of Robertson *v.* Wood, 15 Tex., 1, is
that if the contract is executory, the vendee cannot plead the
statute; but if it is executed, he can.   Then was the contract
in the case at bar an executed one?   The case of Cooper *v.*
Singleton, 19 Tex., 262, is in point.   It was a suit on the
notes for the purchase-money of land, but the court says the
contract of sale was an executed one, because a deed with
covenants of warranty had been given.   Ought not the vendor
or his assignee of a non-negotiable note, in which no mention
is made of real estate, to be required to set up any equitable
claim he may have thereto within five years after he has put
the vendee in possession under deed which recites the pay-
ment of the purchase-money, and which contains covenants
of general warranty?   Or ought not the question of adverse
possession, under such circumstances, be left to a jury?

The third assignment which we shall notice, is the ruling
of the court in refusing to give the special charge offered by
appellants.   Condensed, this charge is as follows: If the jury
believe, from the evidence, that the holders of the note had it
established against the estate without claiming lien, and that
none was claimed until the institution of this suit in 1871,
then they were authorized to consider these strong presump-
tions that the lien was thereby waived.

In the case of McAlpin *v.* Burnett, 19 Tex., 497, the
court held, that a party might claim his lien in a second suit,
when he had failed to set it up in the first.   But in the cases
of Rogers *v.* Green, 35 Tex., 730, and Lawler *v.* Yeatman,
37 Tex., 669, the court held, that the taking of a judgment
*in personam* was a waiver of the lien.   It may be very proper
to allow a vendor, during the lifetime of the vendee, to bring
a second action upon the payment of the cost, as is intimated

in the opinion in the case in 19 Texas; but it is submitted, that after a party dies there ought to be some limit to the number of judgments that may be recovered against his estate on a single demand.

After death, the statute grades the claim, and makes it the duty of the administrator to give public notice to creditors to present them within twelve months, and to close the administration as soon thereafter as practicable. The spirit, if not the letter, of the statute requires creditors to present their claims just as they exist, with or without liens; and when a party has promptly established his debts without claiming lien, it should not be considered a hardship if, after the administration had been open twelve years, he should be denied the privilege, because of his own laches and of the policy of our Probate law, of reëstablishing it so as to claim the lien.

*Abercrombie & Goree*, for appellee, cited and discussed Boone *v.* Chiles, 10 Pet., 177; Robertson *v.* Wood, 15 Tex., 1; McAlpin *v.* Burnett, 19 Tex., 497; Cordova *v.* Hood, 17 Wall., 1; Monroe *v.* Buchanan, 27 Tex., 246; Rogers *v.* Green, 35 Tex., 730; Lawler *v.* Yeatman, 37 Tex., 669; Roeder *v.* Robson, 20 Tex., 754.

GOULD, ASSOCIATE JUSTICE.—This was a proceeding on the probate side of the District Court, in which the administrator *de bonis non* of the estate of G. H. Ball, deceased, being himself the holder of a note on his intestate, which had been by the former administrator allowed, and had been also regularly approved as a claim against said estate, and thereafter had been transferred to him, alleged that said note was secured by a vendor's lien on certain real estate, and asked for an order to sell the said real estate, for the purpose of satisfying his debt. The children and surviving mother of the deceased appeared, and resisted this application. They first objected, by plea, to the jurisdiction of the probate branch

of the court. The record, however, shows no action on this plea, and no question is presented growing out of it.

There was also a plea, or answer, the purport of which was that the holder of the claim had acquired it from the firm of J. C. & S. R. Smith, who were the owners thereof when it was (on February 1, 1859) allowed and (on September 16, 1860) approved,—no lien being alluded to or sought to be enforced,—and which firm continued to own it throughout the time when the former administrator, Perrie, had charge of the estate; that S. R. Smith, one of said firm, was one of the sureties on the bond of Perrie, and that the estate had been mismanaged and squandered, and Perrie had so acted as to make himself and sureties liable; that both Perrie and his sureties were insolvent, Perrie having left the State; claiming that the present administrator had acquired the claim with notice of these facts, and that, under the circumstances, it was inequitable to allow the lien to be enforced on the homestead of the intestate and his surviving family.

There were also other pleas, stating that the property on which the lien was claimed was the homestead of the deceased, and that the deceased and the defendants (his heirs) had occupied it as such adversely, &c., setting up adverse possession under the statute, both for three and five years.

The court sustained exceptions to all these pleas, and in so doing did not err. The plea of adverse possession was not applicable to a claim for the enforcement of the moneyed demand.

The other answer was, in substance, an attempt to set off against the claim unliquidated damages against one member of a firm, which firm had transferred the claim pending such liability of one of its members. Aside from the fact that such a claim for damages was not enforcible on the probate side of the court, we think the answer fails to state facts which would invalidate the transfer of the claim by J. C. & S. R. Smith, or which would have subjected the claim in the hands of J. C. & S. R. Smith to be reduced or set off by the

personal liability of S. R. Smith, to be sued as surety on an administration bond.

There was, however, besides a general denial, yet another answer, claiming that if any vendor's lien was originally retained, which was denied, that it had been waived and abandoned; and on the trial, which was had before a jury, the court was requested to charge the jury, " that if they believe, from the evidence, that no claim for a vendor's lien was ever set up on the land in question until the institution of this suit in 1871, and that the holders of the note had it established against said estate without claiming lien, you will be authorized to consider these strong presumptions, that if any lien ever existed against the land, the holders of the note intended thereby to waive it,—a rather strong presumption that they did thereby waive it." This charge was refused. There was a verdict in favor of the plaintiff, and an order made directing the sale of the land, from which the heirs have appealed.

It has been held, that whilst a note is not barred, its lien is not waived by taking judgment on the note alone. (McAlpin *v.* Burnett, 19 Tex., 500; Roberts *v.* Johnson, 48 Tex., 137, citing and approving McAlpin *v.* Burnett.)

Counsel for appellants refer to the cases of Rogers *v.* Green, 35 Tex., 730, and Lawler *v.* Yeatman, as supporting a different rule from that laid down in McAlpin *v.* Burnett. Rogers *v.* Green was a case of a different nature. A vendor, by executory contract, was seeking to recover the land itself, under circumstances which made it inequitable for him to do so, and thus rescind the sale, without first repaying what he had received on the land. Here the holder of a claim secured by lien is simply seeking to enforce that lien, and is not attempting to set aside the sale. The facts in Rogers *v.* Green are so essentially different from the present case, that it cannot be regarded as an authority in point. The opinion, in so far as it is at variance with McAlpin *v.* Burnett, is not authoritative, and seems to be founded on a misconception of Roeder *v.* Robson. Roeder *v.* Robson, 20 Tex., 754, is certainly

no authority for refusing to enforce a lien, because the holder of the claim had taken a personal judgment. The purport of that case, is to deny the right of a vendor by executory contract, at the same time to enforce the contract and to repudiate it.

Lawler v. Yeatman, 37 Tex., 669, was a case more nearly in point, where the vendor's lien was set up, and, after long delay, sought to be enforced against the homestead. But it is to be remarked, that whilst the court in that case say that the plaintiff having elected, in 1859, to sue *in personam*, could not after the lapse of twelve years amend his suit still pending, so as to claim a vendor's lien, the presumption being that it was waived; that it is further stated that the plaintiff stood by during the settlement of his vendor's estate, and saw the property assigned to the widow and minor child as a homestead, when they might, in all probability, had he asserted his lien, have received the widow's and minor's allowance from other property. From this, it is said, they were then cut off, and that they were not to be thus prejudiced by the laches of plaintiff. These circumstances might well have been regarded as equitably estopping the party from setting up his lien. No such facts are alleged or appear in the present case. It does not appear that the plaintiff or the holders of the note ever waived or abandoned their lien, or acted so as to be estopped from asserting it, unless the lien was lost by the failure to assert it in the affidavit authenticating the note as a claim against the estate, or the failure sooner to apply to the court for its enforcement. We do not think that the failure to set up the lien in the affidavit, or when the claim was accepted and approved, amounted to a waiver. (See Danzey v. Swinney, 7 Tex., 618; Ayres v. Waul, 44 Tex., 549.) Nor had the lien been lost by delay in its enforcement, it not having been shown that any one was injured by reason of this delay. At the time this proceeding was commenced, the debt was still in force, and the lien, the incident of the debt, was still alive. (See Perkins v. Sterne, 23 Tex., 561.)

41

Rejecting the time during which limitations were suspended, and less than four years is left, after the presentation of the claim, before this proceeding was instituted. Under these circumstances the court did not err in refusing the instruction asked.

The judgment is affirmed.

AFFIRMED.