R. SAMPSON, ADMINISTRATOR, v. J. M. WYETT AND WIFE.

1. EXECUTION — DORMANT JUDGMENT. — Execution must be issued within twelve months after the rendition of the judgment, or it will be dormant.

2. STATUTE CONSTRUED—JUDGMENT, WHEN DORMANT.—The act of November 9, 1866, entitled "An act to prevent judgments from becoming dormant, and to create and preserve judgment liens," applied to the dormancy that previously resulted from the failure of the plaintiff, after issuance of execution within the year from the rendition of the judgment, to cause executions to issue from term to term, or at least from year to year, as previously required, and not that which results from the failure to issue execution within the year from the date of the judgment.

3. CASES APPROVED.—Black v. Epperson, 40 Tex., 163; Jordan v. Corley, 42 Tex., 286; and Ayers v. Waul, 44 Tex., 549, approved.

4. CASE OVERRULED.—Scogin v. Perry, 32 Tex., 21.

5. INJUNCTION — SALE PENDENTE LITE. — That a plaintiff in an injunction suit, seeking to enjoin the sale under execution of lands, has permitted the lands to be sold pending the litigation, will not affect the right of the plaintiff in the execution sought to be enjoined.

APPEAL from Burleson. Tried below before the Hon. Spencer Ford.

There was judgment in District Court of Burleson county, May 9, 1859, in favor of E. C. Knox and W. F. Grant, for

$479.12, against W. W. Hill. March 17, 1870, this judgment was affirmed in Supreme Court, with damages, against W. J. Hill, administrator of W. W. Hill, and J. M. Wyett and Charles Covington, his sureties on writ-of-error bond. August 20, 1870, the mandate of the Supreme Court was filed with the clerk of said District Court. There were proceedings to revive the judgment, but being ineffectual, they are not stated. On the 14th of September, 1874, affidavit was filed with the clerk that W. F. Grant died November 6, 1871, together with certificate that R. S. Simpson had been appointed his administrator; whereupon the clerk on that day issued *fieri facias* on the judgment, reciting all the proceedings above. October 9, 1874, this *fieri facias* was levied on lots in the town of Caldwell, as the property of J. M. Wyett. This suit was brought to enjoin the sale, on the ground that the judgment was dormant. It was also alleged that the lots were a part of the homestead, but that claim was abandoned. Pending the suit, one Dean caused the lots to be levied on, under a judgment in his favor against defendants. Sale was made, and Dean became the purchaser. Judgment for plaintiffs perpetually enjoining the execution. Motion for new trial was overruled, and defendant Simpson appealed.

*J. D. Thomas,* for appellant.

I. Is the judgment dormant?

The original judgment was rendered in the District Court of Burleson county May 9, 1859, in favor of E. C. Knox and W. F. Grant, against W. W. Hill. Said Hill took the case to Supreme Court on writ of error. Plaintiff J. M. Wyett and C. Covington were his sureties on error bond; the judgment was affirmed with damages March 17, 1870, against W. J. Hill, administrator of W. W. Hill, and Wyett and Covington as sureties. The mandate of the Supreme Court was filed with the clerk of Burleson county August 20, 1870.

On the 6th of December, 1872, there was an order to revive the judgment, on the petition of Knox. There was,

however, some defect of parties in this proceeding. After the appointment of appellant as administrator of W. F. Grant, on the 14th of September, 1874, the proper affidavit of the death of Grant and certificate of the appointment of his administrator, as required by statute, (Paschal's Dig., 13,) having been filed, the execution issued, which was enjoined.

I insist this was all the revivor required. The filing of the mandate, August 20, 1870, was the authority to issue execution. (Paschal's Dig., 1571.) By the act of 1866, (Paschal's Dig., 7007,) the judgment could not become dormant till ten years from that time. This statute has been authoritatively construed a number of times, and it has uniformly been held to authorize an execution at any time within ten years after judgment. (Scogin v. Perry, 32 Tex., 21; Cravans v. Wilson, 35 Tex., 55; Hutchins v. Chapman, 37 Tex., 614; Williams v. Murphy, 36 Tex., 167; Wright v. Rhodes, 42 Tex., 527.)

These cases are met by no decision to the contrary, but merely by a few dicta, amounting to no authority whatever, as in Black v. Epperson, 40 Tex., 163. To oppose these dicta, I give positive decisions above. And in the same volume of reports we have a forcible statement of the effect which should be given to mere dicta. (Smith v. Alston, 40 Tex., 141.)

II. But there is a better reason still for the reversal of the judgment. It is shown by plaintiff's own testimony that neither he nor his wife has or claims any interest whatever in either of the lots levied upon.

Since the commencement of this suit, plaintiff permitted the lots to be sold under another execution. They were bought by one Dean. Now, if Dean wants the benefit of a perpetual injunction in this case, it was his duty to make himself a party and seek the appropriate relief. There were sufficient reasons why he did not choose to do so. By some strange oversight, the judge granting the injunction required a bond of only $600. The judgment, with eighteen years'

interest, exclusive of costs, is nearly $1,500. Before Dean could have had an injunction in his favor, he must have made a larger bond; or if he had permitted the sale to take place, it would have given title to the purchaser, though the judgment were dormant. Now, by statute, (Paschal's Dig., 3930,) no injunction shall be granted further than the plaintiff shall show himself equitably entitled to have it; yet on the trial, when it appears beyond dispute that plaintiff has no equity whatever in the matters of the suit, and claims none, the court grants him a perpetual injunction against the execution. I insist, that no decree granting any relief to the plaintiffs in the suit can be supported on any principle of law or equity. Appellant pleaded the want of interest in appellees. The decree rendered is really in favor of Dean, who studiously avoided becoming a party in any form. At the trial, there was no party before the court who could insist on a perpetuation of the injunction. It ought not, therefore, to have been perpetuated.

I ask that the judgment be reversed, and proper judgment rendered here. Counsel say the rule of practice requires the judgment to be rendered according to the status of parties at the commencement of the suit, irrespective of change pending the suit; that is, if a note in suit be paid pending the suit, and the fact be pleaded and proved, still judgment must go for the amount of the note. I am free to say, I know of no such rule; and I know none that authorizes a perpetuation of the injunction in this case.

*Sayles & Bassett* and *Davis & Beall*, for appellees.

I. The judgment was dormant, because no execution was issued thereon within one year from the first day on which execution could by law have issued thereon. (Paschal's Dig., 7005, 7007, 4608, 3954, 3783; DeWitt *v.* Jones, 17 Tex., 623; Russell *v.* McCampbell, 29 Tex., 39; Black *v.* Epperson, 40 Tex., 163; Bennett *v.* Gamble, 1 Tex., 124; Jordan *v.* Corley, 42 Tex., 286; Scott *v.* Allen, 1 Tex., 561; Shapard *v.* Bail-

leul, 3 Tex., 30; Hall *v.* McCormick, 7 Tex., 269; Fessenden *v.* Barrett, 9 Tex., 475.)

II. The case will be tried upon the rights of the respective parties as they existed when the suit was brought, without regard to intervening rights of third persons, acquired from either party pending the suit.

Pending the suit, a judgment creditor of the appellee levied on the lots in controversy, had them sold, and became the purchaser of them. Since the sale, the appellees have not claimed them, and did not claim at the time of the trial. (Lee *v.* Salinas, 15 Tex., 495; Board, &c., *v.* T. P. R. W. Co., 46 Tex., 326; Briscoe *v.* Bronaugh, 1 Tex., 333; Portis *v.* Hill, 30 Tex., 568; Freem. on Judg., sec. 193.)

MOORE, ASSOCIATE JUSTICE.—It is not denied by appellant that judgments of courts of record in this State become dormant, unless execution issued thereon within twelve months after the rendition of the judgment, prior to the enactment of the statute of November 9, 1866, entitled "An act to prevent judgments from becoming dormant, and to create and preserve judgment liens." But he insists that the common-law rule, that the vitality of a judgment is suspended by failure to issue execution thereon within a year and a day from its rendition, which became the law with us by the adoption of the common law, January 20, 1840, and which is, in effect, recognized and reënacted by the second section of the act of limitations of February 5, 1841, and also by the act of January 27, 1842, concerning executions, was abrogated by said act of November 9, 1866. Certainly, if the effect sought to be deduced from this last-mentioned statute is such as appellant claims, it must result from some obvious inconsistency or irreconcilable conflict between some of its provisions upon this subject and the previous law; for, unquestionably, this statute contains no direct provision of this kind, and does not purport, in direct or express terms, to make any such change. But an examination of it fails to show any such conflict be-

tween this statute and the previous law regarding dormancy of judgments, that both may not stand and be fully and easily reconciled with each other; nor can we see anything in this act to justify the conclusion that the Legislature intended by ·its enactment to alter the previous law in respect to the matter here in question. It is, in our opinion, quite obvious that the dormancy which it was the purpose of the Legislature to prevent, was that which previously resulted from the failure of the plaintiff, after issuance of execution within the year from the rendition, to cause execution to issue from term to term, or at least from year to year, as previously required, and not that which results from the failure to issue execution within the year from the date of the judgment.

Unquestionably, a different view of this act was expressed by our predecessors in the case of Scogin *v*. Perry, 32 Tex., 21. But the construction which the court gave this act in that case, and the case of Williams *v*. Murphy, 36 Tex., 167, was directly and unequivocally repudiated in the subsequent case of Black *v*. Epperson, 40 Tex., 163, and impliedly in the cases of Jordan *v*. Corley, 42 Tex., 286, and Ayers *v*. Ward, 44 Tex., 549.

It is insisted by appellant that Black *v*. Epperson should not be regarded as of authority upon the point now before the court, because, as he maintains, it was unnecessary to the decision of the case then before the court, and we are free to admit that the case might have been disposed of without reference to it. At the same time, we think it was sufficiently pertinent to the matter before the court to fully justify it in announcing its opinion regarding it. But if the case of Black *v*. Epperson might have been decided without a discussion of this subject, so might the case of Scogin *v*. Perry, as were most, if not all, of the cases referred to by appellant as supporting and affirming it.

Upon the case presented to the court, it did not err in adjudicating it in accordance with the rights of the parties when the suit was brought. The validity of the execution which

appellant was seeking to enforce, or the dormancy of the judgment upon which it issued, was in no way affected by the sale of the land as appellee's property after the bringing of this suit. The purchaser acquired only such title to the land as appellee had. This obviously depended upon the ultimate result of this case. If appellant's execution bound the land, then it was still liable notwithstanding the sale; but if not, appellant had no right to complain; and appellee did not. If appellee had sought to dismiss the suit after the land was sold, a different question would have been presented. It will be time enough, however, to consider it when it arises. The judgment is affirmed.

Affirmed.