H. R. SUTHERLAND, GUARDIAN, v. HENRY ELMENDORF ET AL.

Decided June 6, 1900.

**1.  Decedents' Estates—Lien Not Waived in Filing Claim.**

Where the holder of a judgment foreclosing a lien on land made an agreement with the owner of the land to convey to him on payment of the amount due within a specified time, but the full amount was not so paid, and on such owner's death the holder of the judgment, by agreement with his administrator, put in a claim against the estate for the balance due, without specifying a lien, upon the representation that the estate was solvent and the claim would be paid, and it was allowed as a fourth class claim only, and was never paid, the estate proving insolvent, such filing and allowance of the claim did not estop the holder of the judgment from asserting his lien, and the guardian of the heirs of such deceased owner were not entitled to have canceled a sheriff's deed made under foreclosure of the lien without tendering the balance due under the agreement.

**2.  Same—Setting Apart Homestead—Res Judicata.**

Filing a claim in the probate court against an estate for an amount secured by a judgment lien on land on payment of which the claimant was to convey the land back to the estate, did not make such claimant a party to a proceeding in that court whereby the land was set apart to decedent's minor children as a homestead, and hence such proceeding was not res judicata as to him.

APPEAL from Bexar.  Tried below before the Hon. J. L. CAMP.

*Webb & Finley,* for appellant.

*Summerlin, Walling & Norton* and *James Routledge,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellant, as the guardian of the persons and estates of Annie and Hugh Cronkey, minors, instituted this suit against Henry Elmendorf, Dan Sullivan, and Eugenie Dooley, to cancel certain sheriff's deeds and remove cloud from the title of certain lots of land in the city of San Antonio.  The cause was tried by the court and resulted in a judgment for appellees.

It was in proof that on February 16, 1891, H. B. Adams and E. D. L. Wickes conveyed to Charles L. Dignowity lots 1 and 2 in block 4, being the property in controversy, the consideration being $1000 cash and six notes for $500, to secure which a vendor's lien was reserved.  On February 1, 1898, the same property was conveyed by Dignowity to W. F. Cronkey, the deceased father of the minors aforementioned, in consideration of $1800, viz., $550 in cash, and three notes, one for $250, another for $450, and the third for $550.  The first two notes were paid by Cronkey.

Dignowity did not pay off the notes given to Adams and Wickes, and on August 20, 1894, in a suit on the notes brought by Mrs. Wickes, the owner of the same, against Dignowity, Elmendorf, and W. F. Cronkey, judgment was obtained for the amount, and a foreclosure was had of the vendor's lien on the land.  Afterwards the judgment was transferred by Mrs. Wickes to Dan Sullivan and Elmendorf, and by virtue of an order of sale the property in controversy was sold, and was purchased by

Elmendorf and Sullivan. Sullivan afterwards sold his interest to Elmendorf.

On September 3, 1894, shortly after the judgment had been obtained by Mrs. Wickes foreclosing the vendor's lien, the following receipt was executed by Elmendorf: "Received from W. F. Cronkey the sum of $250 on account of judgment I hold against C. L. Dignowity of about $1000. Upon payment to me of the balance of the judgment within seventy-five days I am to transfer the same to whom Mr. Cronkey may direct. If Mr. Cronkey fails to pay the above balance of about $750 within seventy-five days, he is to forfeit the payment of $250, and this receipt is to be of no further force and effect." On December 13, 1894, Cronkey paid $250 on the amount of debt, and no further sum has since been paid. In 1892 R. W. Staacke obtained a judgment against C. L. Dignowity and Henry Elmendorf for $7848, the latter being bound as a surety. An abstract of the judgment was duly filed, recorded, and indexed, and became a lien on the property in controversy prior to the time it was bought by Cronkey. The land was afterwards, with other lands, sold by the sheriff under execution issued under said judgment, and was bought by Elmendorf. Cronkey died leaving the amounts due on the land unpaid.

It was admitted by Elmendorf that he agreed to convey the land to Cronkey upon payment of the amounts due on the Wickes and Staacke judgments, and he offered in court to make the conveyance on payment of said sums. After the death of Cronkey administration was taken out on his estate, and Elmendorf presented to the administrator a claim, two of the items of which were the balances due on the two judgments, and the same was allowed by the administrator and approved by the County Court as a fourth class claim against the estate. We find that the claim was presented to the administrator upon an understanding upon the part of Elmendorf that the estate was solvent and that his claim would be paid, and then he was to carry out the agreement made with Cronkey and convey the property to his estate. The estate was shown to be insolvent, the claim was not paid, and the property in controversy was set apart by the County Court as a homestead for the minors. The land was not the homestead of W. F. Cronkey, deceased.

There is neither allegation nor proof to the effect that W. F. Cronkey performed the terms of the written contract between him and Elmendorf as to the payment of the sum specified, and there was no offer to pay off the $500 which the uncontradicted proof shows is paid on the Wickes' judgment for the purchase money, and not only this sum, but a balance due on the Staacke judgment, was allowed by appellant as a just claim against the estate of W. F. Cronkey. With these sums unpaid, and without an offer to pay the same, appellant insists that, Elmendorf having paid out his money to get the land which he agreed to convey to Cronkey on certain conditions, the estate of Cronkey must have the land, although Elmendorf has not been repaid the sums he paid out. If,

as insisted by appellant, Elmendorf bought the land at sheriff's sales for Cronkey, and held it in trust for him, the trustee paid his money for it, and equity will not compel him to convey the land to Cronkey or his heirs until the money paid out by him has been repaid.  Brock v. Jones, 16 Texas, 447; Harvey v. Clark, 65 Texas, 93; Gardner v. Rundell, 70 Texas, 453.

Appellant not only did not offer to do equity by paying off any sums paid out by Elmendorf on the land, but failed to respond when he offered to convey, if the amount pronounced just by the administrator was paid, and further failed to pay the balance due on the written agreement made with Elmendorf upon which the suit is based.  Appellant has not assumed a position that entitles him to the consideration of a court of equity.  The presentation of the claim by Elmendorf to the administrator of Cronkey's estate, without specifying a lien, and the allowance of the same as a fourth class claim, did not estop Elmendorf from asserting his lien or claiming title to the property.  Ball v. Hill, 48 Texas, 634; Kempner v. Comer, 73 Texas, 196.

In the case of Ball v. Hill it is said: "It does not appear that the plaintiff or the holders of the note ever waived or abandoned their lien, or acted so as to be estopped from asserting it, unless the lien was lost by the failure to assert it in the affidavit authenticating the note as a claim against the estate, or the failure sooner to apply to the court for its enforcement.  We do not think that the failure to set up the lien in the affidavit, or when the claim was accepted and approved, amounted to a waiver."

As said in the case of Connar v. McDaniel, 46 Texas, 303: "In the defense by the administrator, it is not pretended that the notes have been paid, or that he has any legal or equitable defense against them, other than the alleged irregularities of plaintiffs in their efforts to collect them.  It is evident from the record that the administrator has been actively engaged in the effort to appropriate the land, in which the estate never had any legal title, to other purposes, without the purchase money having been paid for which the land is bound by express mortgage lien given to secure the notes when the land was purchased."

We do not think that the filing of the claim against the estate made Elmendorf a party to all proceedings in the County Court, nor that the setting apart of the homestead on which he had a lien, and to which he had legal title, was res adjudicata as to him.  Setting apart land belonging to Elmendorf, or on which he had a lien, to the minors, as a homestead, did not deprive him of his title or destroy his lien.  McDougal v. Bradford, 80 Texas, 558.  The case of McLane v. Paschal, 62 Texas, 102, is cited as upholding a contrary doctrine, but the decision in that case does not support the contention of appellant.

The administrator knew that the purchase money on the land was unpaid, and told Elmendorf that he wanted to pay it, and in view of that representation the claim was filed.  The cause was tried without

a jury, and if it be conceded that the testimony of Summerlin as to what Young Sutherland told him about the solvency of the estate should have been excluded, we do not think it was injurious to appellant, especially in view of the fact that Young Sutherland testified that he told Summerlin that the estate was solvent. We do not see that appellant has any cause to complain of the cancellation of Elmendorf's claim against the estate, whether it was justified by the pleadings or not. The minors are not injured by the cancellation.

Appellant was invoking the equitable powers of the court and to obtain their exercise should have offered to do equity, and not doing so he could not recover. The offer of Elmendorf to receive the purchase money and make a conveyance of the land, was not required of him, and being made, did not place appellant in any worse position than that voluntarily assumed by him. We are of the opinion that there is no error in the record necessitating a reversal, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.