PADDOCK v. WILLIAMSON et al. (No. 1695.)

Court of Civil Appeals of Texas. Beaumont. June 6, 1928.

Rehearing Denied Oct. 3, 1928.

McCall & Crawford, of Conroe, for appellant.

Foster & Williams, of Houston, for appellees.

WALKER, J. In 1916, Clinton Bybee and his wife gave to the Security Trust Company of Galveston a deed of trust upon 350.5 acres of land owned by them in Montgomery county, Tex., to secure a note of even date with the deed of trust due by them to the Security Trust Company in the sum of $2,300, due and payable August 1, 1921. After executing this deed of trust, Bybee and his wife conveyed this 350.5 acres of land to W. J. Williams on a consideration of part cash and the assumption by him of the deed of trust note and lien. On December 6, 1918, Williams, joined by his wife, conveyed this land to three negroes, as follows: To Richard Johnson, an undivided interest of 150.5 acres on the consideration of part cash, the assumption by Johnson of the pro rata part of the Bybee note and deed of trust lien, and two vendor's lien notes; to Alex Baldwin, an undivided interest of 100 acres on the consideration of part cash, the assumption by Baldwin of the pro rata part of the Bybee note, and the execution of two vendor's lien notes; to Eliza Foote, known in the record hereafter as Eliza Cook, an undivided interest of 100 acres on the same consideration paid by Baldwin. The trial court's conclusions of fact do not give the amount of the cash consideration paid by Williams and his vendees, Johnson, Baldwin, and Foote, nor the amount of the vendor's lien

notes executed by them as part consideration. However, this was an immaterial issue.

On February 6, 1926, Johnson, Baldwin, and Cook conveyed the timber on this land to J. H. Williamson, giving him three years within which to cut and remove it, at $2.25 per thousand feet, to be paid as the timber was cut and removed; payment to be made every two weeks for all timber cut prior to the respective payment dates.

On February 20, 1926, Johnson, Baldwin, and Cook assigned to Strode & Pitts, a firm of lawyers, their contract with Williamson and all moneys due them on that contract, by a written assignment indorsed on the original contract with Williamson, and on the same date, by a separate written instrument, sold and conveyed to Strode & Pitts all the rights they had in the pine timber situated on the land herein described, with right of ingress and egress in and across the same for the period of three years for cutting and removing the timber. This sale was made subject to the prior contract of sale made to Williamson. These timber contracts were not filed for record until May 22, 1926.

The Bybee note to the Security Trust Company was never paid. In September, 1922, after the death of Clinton Bybee, the Security Trust Company instituted suit in the district court of Galveston county against Mrs. Mollie Bybee, the surviving wife of Clinton Bybee, and the heirs at law of Clinton Bybee, on the $2,300 note, as above described, and to foreclose the deed of trust lien against the 350.5 acres of land. Though the defendants named in the petition were duly served, the case was not prosecuted to judgment by the Security Trust Company, but in 1926, after the execution of the timber contracts, as above described, the Security Trust Company sold its note and deed of trust lien to appellant, M. E. Paddock, and assigned to him in connection with that sale its suit against the Bybees, and authorized him, at his cost but in its name, to prosecute the suit to judgment. In April, after taking this assignment, appellant, Paddock, made Johnson, Baldwin, and Cook parties defendant, and on trial had in June, 1926, judgment was in his favor against Mrs. Bybee for the amount of the note, with foreclosure of deed of trust lien against all the defendants named in his pleadings. Johnson, Baldwin, and Cook were represented in this litigation by appellees Strode & Pitts, who answered by pleas of limitation against the debt and lien. Appellee Williamson was present at the trial, but neither Strode & Pitts nor Williamson were made parties to the suit, and the judgment in no way ran against them. After the entry of that judgment, Johnson, Baldwin, and Cook duly perfected their appeal to the Court of Civil Appeals at Galveston. Afterwards appellant, Paddock, settled with Johnson, Baldwin, and Cook and took a quitclaim deed from them to the 350.5 acres of land. This deed was dated the 26th day of July, 1926, and the settlement was made without the knowledge of Strode & Pitts and Williamson. After making this settlement, Johnson, Baldwin, and Cook dismissed their appeal without the knowledge of their attorneys or Mr. Williamson.

When the Security Trust Company filed its suit against the Bybees, it knew of the sale by the Bybees of the 350.5 acres of land to Williams and of the sale by him to Johnson, Baldwin, and Cook. When appellant, Paddock, bought the Bybee note from the Security Trust Company, he had actual knowledge of all the transfers of the 350.5 acres of land and of the claim of Williamson and Strode & Pitts to the timber. After taking the quitclaim deed from Johnson, Baldwin, and Cook, Paddock made no effort to execute his judgment foreclosing the deed of trust lien, and that judgment was never executed, nor was the land ever sold under the order of sale granted therein, nor was the judgment ever paid or canceled in any way.

After appellant, Paddock, secured his judgment in the Galveston county district court, Williamson and Strode & Pitts made an effort to enter upon the 350.5 acres of land for the purpose of cutting and removing the timber under their contract with Johnson, Baldwin, and Cook, but were denied the right of entry by Paddock, who claimed to own the timber under his judgment in the Galveston district court and his quitclaim deed. Thereupon Strode & Pitts and Williamson filed this suit against Paddock in the district court of Montgomery county, pleading title to the timber under the contract with Johnson, Baldwin, and Cook. They also pleaded Paddock's quitclaim deed from their grantors, but alleged that it was junior to their timber contracts, and that he took his deed with knowledge of their prior rights. They prayed for a temporary injunction restraining Paddock from interfering with them in their efforts to cut and remove the timber. Paddock answered by plea of the execution of the $2,300 note and deed of trust by the Bybees, the filing of the suit thereon by the Security Trust Company in the district court of Galveston county, the purchase by him of the note and lien with the assignment of the suit, and the making of Johnson, Baldwin, and Cook parties to that suit. He further pleaded that Strode & Pitts represented Johnson, Baldwin, and Cook in the trial, and therefore had knowledge of the pendency of the suit and of the judgment rendered therein, and that appellee Williamson was present at the trial and knew of the judgment rendered therein. By reason of these facts he further pleaded that Strode & Pitts and Williamson were bound by the judgment as rendered, and were estopped to deny its binding effect against them. On this count his prayer was:

"Wherefore this defendant prays that he go hence without day and recover his costs in this behalf expended."

By a second count he pleaded against Strode & Pitts and Williamson a cross-action, under the usual allegations of trespass to try title. Under this count he prayed for judgment against Strode & Pitts and Williamson for the title and possession of the land and timber in controversy. Strode & Pitts and Williamson answered by a supplemental petition, disclaiming title to the land, but claiming the timber under their timber contract, and by pleading specially the statute of limitations against the Bybee note on the ground that Johnson, Baldwin, and Cook were not made parties until more than four years after the maturity of the Bybee note, and that they, plaintiffs, Strode & Pitts and Williamson, were never made parties to the Galveston suit. In answer to Paddock's plea of estoppel, they pleaded that the judgment against Johnson, Baldwin, and Cook was erroneous, and that by force and fraud appellant, Paddock, induced Johnson, Baldwin, and Cook, to settle the case and to dismiss the appeal without the knowledge of plaintiffs. On this ground they pleaded that appellant, Paddock, was estopped to urge the judgment against them. On these issues plaintiffs, appellees here, prayed as follows:

"Wherefore, defendant having already appeared and answered herein, these plaintiffs pray for judgment establishing their rights under and by virtue of their contracts aforesaid, and restraining and enjoining defendant M. E. Paddock from interfering with plaintiffs in entering upon said land and cutting and removing the timber in accordance with the terms and provisions of the contract of plaintiffs Williamson with said Johnson, Baldwin, and Eliza Cook aforesaid, and for all such orders and decrees as are proper and necessary to enable plaintiffs to carry out the terms and provisions of said contract. Plaintiffs also pray for all other and further relief to which they may be entitled both in law and equity under the facts of this case."

The trial was to a jury, and on conclusion of the evidence the jury returned the following verdict, under instructions of the court:

"We, the jury, find for the plaintiffs as prayed for in their first amended original petition."

In support of the peremptory instruction given the jury, the trial court filed conclusions of fact and law. The statement made of the nature and result of this suit, supra, is taken from the trial court's conclusions of fact. All assignments against the conclusions of fact are overruled. The facts found were shown without controversy.

■ The court did not err in instructing against appellant's cross-action in trespass to try title, in so far as it involved the timber in controversy. The Bybees were the common source of title. Though they had mortgaged the land to the Security Trust Company of Galveston, their deed to Williams had the effect of conveying to him the legal title to the land, subject, however, to the deed of trust

lien. As said by the Supreme Court in Bradford v. Knowles, 86 Tex. 509, 25 S. W. 1118:

"The mortgagor in this state has the legal title."

■ Williams' conveyance to Johnson, Baldwin, and Cook vested in them the legal title, burdened still by the deed of trust lien. Owning the legal title to the timber, they had the right to execute to Williamson the timber contract and to convey this contract and the timber covered thereby to Strode & Pitts, subject, however, to the rights of the holder of the mortgage debt and lien. This timber contract and the subsequent conveyance of the timber to Strode & Pitts divested Johnson, Baldwin, and Cook of all right, title, claim, and interest in and to the timber, but left them owning the legal title to the land. Their conveyance to Strode & Pitts created a severance of the estate in the timber from the estate in the land. Hager v. Stakes, 116 Tex. 453, 294 S. W. 835. By and under the quitclaim deed from Johnson, Baldwin, and Cook, appellant, Paddock, acquired the legal title to the land; but as this deed was junior to the timber contracts held by appellees and acquired by him with actual knowledge of the execution and delivery of those contracts, he acquired no interest in the timber on this land by virtue of his quitclaim deed.

■ Appellant insists that he also acquired title to the timber under his judgment foreclosing his mortgage lien in the district court of Galveston county. This proposition is not sound. The judgment was never executed, no sale had thereunder, and therefore no title passed by reason of the judgment. The foreclosure of the lien without sale does not pass title, any more than the execution and delivery of a deed of trust. The mortgagor and his vendees remained the holders of the legal title until divested thereof by a judicial sale, effective against all necessary parties. But had the judgment against the Bybees and Johnson, Baldwin, and Cook been executed by selling the land, the purchaser would not have acquired title to the timber against Williamson and Strode & Pitts, since they were not parties to that suit, though they acquired the title to the timber before Johnson, Baldwin, and Cook were made parties to the suit. Under the decisions of our Supreme Court, the foreclosure of the Bybee deed of trust without making these appellees parties thereto was wholly ineffective against them, and did not divest them of the legal title. As said by the Supreme Court in Bradford v. Knowles, supra:

"It has been settled in this state by numerous decisions, that when the mortgagor has conveyed the mortgaged premises, and the mortgagee has notice of the conveyance, the grantee of the mortgagor is a necessary party to a suit for foreclosure, and a sale of the property under a decree to which he is not a party does not affect his right."

See, also, King v. Brown, 80 Tex. 276, 16 S. W. 39; Railway Co. v. Blount (Tex. Civ. App.) 136 S. W. 566. On the facts of this case the fact that Strode & Pitts represented Johnson, Baldwin, and Cook in the Galveston county litigation would not work an estoppel against them, nor make them parties to the judgment in that case; nor did Williamson's presence in the courtroom and his knowledge of the judgment as entered work an estoppel against him. It follows that appellant had no title to the timber against appellees by reason of his foreclosure in the Galveston court, and that he cannot acquire title by a sale under that judgment.

Appellees assert that the Bybee note and lien were barred by limitation at the time they purchased the timber from Johnson, Baldwin, and Cook, and therefore the mortgage lien had ceased to exist. On that proposition they ask us to affirm the judgment of the trial court. This proposition rests upon the following facts: At the time of the execution of the timber contracts the Bybee note, as shown by the deed records of Montgomery county, was more than four years past due and had not been renewed by an extension contract; Johnson, Baldwin, and Cook acquired the legal title to the land after the execution of the mortgage lien and before the maturity of the debt, but were not made parties to the suit in Galveston county to foreclose the mortgage lien until after the execution of the timber contracts to appellees; appellees acquired their title to the timber without actual notice of the pending suit in Galveston county and were never made parties to that suit; the Security Trust Company, when it filed its Galveston county suit, had both actual and constructive notice that Johnson, Baldwin, and Cook owned the legal title to all the land covered by their lien; no lis pendens notice of the Galveston suit was filed in Montgomery county. On the facts thus summarized, appellees say that the note and lien were barred under the statute of limitations and, if not barred, they were innocent purchasers against the lien.

■ Appellees' proposition is not sound. Under Bradford v. Knowles, 86 Tex. 509, 25 S. W. 1117, the filing of a suit upon a mortgage debt and lien, not barred by limitation, by the holder against the maker, removes the debt and lien from the operation of the statute of limitations without making the subsequent purchasers a party to the suit, though at the time the holder knows of their claim and that the maker has parted with all his interest in the land covered by the lien. In support of their proposition, appellees cite Ward v. Anderson, 297 S. W. 281, by this court (approved by the Supreme Court), where we held that a suit upon a lien barred at the time the subsequent purchaser acquired his interest was ineffectual to revive the lien against him. This was also the conclusion of the Galveston court in Flewellen v. Cochran,

19 Tex. Civ. App. 499, 48 S. W. 39, and the Supreme Court in Holford v. Patterson, 113 Tex. 410, 257 S. W. 213. In the Holford Case, after giving the statute of limitations application to the facts before him, Judge Greenwood said:

"Because an entirely different question was presented, it was held that, so long as the debt was not barred, land charged with its payment might be bound by contracts in extension of the debt, between the original debtor and the holder of the lien, though the land had passed from the debtor to a subsequent purchaser prior to the date of the extension contract. Templeman v. Kempner (Tex. Civ. App.) 223 S. W. 293 (writ of error ref.); Allison-Richey Gulf Coast Home Co. v. Welder (Tex. Civ. App.) 220 S. W. 392."

Articles 5521, 5522, R. S. 1925, provide that a deed of trust lien may be removed from the bar of the statute of limitations by executing and recording an extension contract. In Ater v. Knight (Tex. Civ. App.) 218 S. W. 648 (writ refused), it was held that the filing of suit has the same effect in tolling the statute as the executing of an extension contract. Under the authorities cited, the Bybee note and lien were not barred by limitation when appellees acquired the timber.

■■ Nor were appellees innocent purchasers against the mortgage lien. At common law a suit to foreclose a mortgage lien is lis pendens to all persons dealing with the land covered by the lien. 42 C. J. 67. So, the pending suit in the Galveston district court was constructive notice to appellees that the holder of the Bybee note had removed it from the operation of the statute of limitations, unless the plaintiff was required to file a lis pendens notice by the provisions of articles 6640–6643, R. S. 1925. By the express provisions of article 6640, the plaintiff in a suit "to enforce any lien" against real estate is required to file a lis pendens notice as protection against innocent purchasers. By article 6643, it is expressly provided that such notice "shall not be deemed constructive notice." Had a lis pendens notice been filed, it would have served merely to refer appellees to the court proceedings, and their examination would have done nothing more than disclose the Bybee deed of trust. Appellees had notice of that lien from the deed records of Montgomery county, and therefore plaintiff's petition would have disclosed nothing that appellees did not already know. The lis pendens statute does not deal with the rights of persons with actual or constructive notice of the claim asserted by the plaintiff in his pending suit which would constitute a burden against the title to the real estate involved. In other words, it is not the purpose of the lis pendens statute to give notice that a claimant of real estate has filed suit to assert his claim, but only that he has the claim. So, where a prospective purchaser or incumbrancer has actual or constructive notice of

the adverse claim, he is not within the provisions of the lis pendens statute, Ater v. Knight, supra.

The filing of the suit upon the Bybee note and lien took them out of the provisions of articles 5521, 5522, supra. Citing these articles under their old numbers, it was said in the Ater Case, supra:

"The articles of the statute just referred to would seem to indicate that when suit is brought such action will dispense with the extension provided for under the statute, and that the rules of law with reference to the running of the statute will not otherwise be affected."

That was a suit upon a mortgage debt and lien. Discussing the lis pendens statute in relation thereto, it was held that such a suit is lis pendens to all parties dealing with land covered by a lien where the deed records of the county where the land is situated disclose the lien, and that without the filing of a lis pendens notice. Appellees were not innocent purchasers against the Bybee note burdened by that lien.

The Fortieth Legislature, 1927, c. 59, amended article 6643, supra. But that amendment has no bearing upon the facts of this case. All these transactions were prior to the amendment. The emergency clause to the amendment states that the amendment was "in view of the holding of the courts in the case of O'Brien v. Perkins [Tex. Civ. App.] 276 S. W. 308 [Shelton v. O'Brien (Tex. Com. App.)] 285 S. W. 261."

The difficulty in this case arises out of the state of appellant's pleadings. He has sought no affirmative relief under his deed of trust, but pleaded his deed of trust and his foreclosure judgment in the Galveston district court only as title, which, of course, it was not. Under Morrow v. Morgan, 48 Tex. 308, and King v. Brown, supra, appellant had the right, on filing proper pleadings, to compel appellees to adjust his lien, but he has no such plea. Appellant, under the allegations of his original and supplemental answers, raised no issue of affirmative relief. Had he made the proper issues on the facts disclosed by this record, under the law, as we understand it, the court's judgment should have been as follows:

(a) In favor of appellant under appellees' disclaimer for the land;

(b) In favor of appellees for the title to the timber;

(c) A finding of the amount due upon the original mortgage debt, as owned by appellant;

(d) A foreclosure of the lien against both the land and timber;

(e) A decree requiring that the land be sold first and the proceeds of the sale applied upon the debt;

(f) The sale of the timber to pay the balance, if any, remaining after the proceeds of the sale of the land were applied to the debt.

As appellant was entitled to no affirmative relief under his answer, what relief were appellees entitled to under the allegations of their petition and their prayer? The pleadings fully disclosed the facts. The trial court's conclusions of fact followed the allegations of the petition and answer. Appellees did not controvert by their pleadings the execution of the note and the lien by the Bybees, but made against it the issue of limitation. On these allegations appellees prayed "for all such orders and decrees as are proper and necessary to enable plaintiffs to carry out the terms and provisions of said contract" (referring to their timber contract with Johnson, Baldwin, and Cook). "Plaintiffs also pray for all other and further relief to which they may be entitled both in law and equity under the facts of this case." Appellees were plaintiffs in this case, seeking an affirmative recovery of the timber against appellant. Their pleadings and the evidence showed them to be the owners of the title to the timber, but disclosed the lien held by appellant. They were given a judgment by the trial court freeing their title to the timber of appellant's lien. As plaintiffs they can only recover the title owned by them. By their prayer they invoked the equitable powers of the court, asking for equitable relief. Equity can grant them the title only when they have freed it of appellant's mortgage lien. Therefore, it is our conclusion, under the allegations and prayer of appellees' pleadings, that the court erred in entering judgment in their favor freeing the timber of appellant's lien. In order that equity may be done between the parties, we order that the judgment of the trial court be reversed and the case remanded, with instructions to the trial court to inquire into and determine the amount owing on appellant's mortgage debt and lien, as foreclosed in the Galveston district court; having determined this amount, that judgment be entered in favor of appellant for the title to the land, in favor of appellees for the title to the timber, decreeing that the land be sold first, and that the proceeds of the sale of the land be applied towards the liquidation of the mortgage debt; if the land fails to sell for enough to liquidate the debt, that then the timber be sold and the proceeds applied towards the liquidation of the balance; should the timber sell for more than enough to pay the balance due upon the debt, that the residue be paid to appellees, and that the court make such further orders necessary to effectuate this judgment.

Reversed and remanded, with instructions.