**UNIVERSITY SAVINGS AND LOAN AS-
SOCIATION et al., Petitioners,**

v.

**SECURITY LUMBER COMPANY,
Incorporated, Respondent.**

No. B–261.

Supreme Court of Texas.

Nov. 29, 1967.

Dissenting Opinion and Rehearing
Denied Jan. 17, 1968.

Eastham & Meyer, Sam Dawkins, Jr., Townes & Townes, Edgar E. Townes, Jr., Houston, for petitioners.

Bracewell & Patterson, William K. Wilde and Ronald C. Kline, Houston, for respondent.

CALVERT, Chief Justice.

The trial court, in a trial without a jury, awarded Security Lumber Company, Inc. a joint and several judgment against Wieghard Construction Company, Jack C. Westmoreland, Harold A. Currlin and Thomas A. Wieghard for the sum of $12,284.36, plus interest and attorney's fees. The principal recovery represented the value of materials alleged to have been furnished to Wieghard Construction Company for construction of improvements on three city lots. Liability of Westmoreland, Currlin and Wieghard was based on written contracts, required by Security before it would deliver materials, guaranteeing payment of the construction company account. The trial court judgment also established validity of statutory mechanic's and materialmen's liens on the three lots in favor of Security; established priority of such liens over deed of trust liens on the three lots held by University Savings & Loan Association, which had foreclosed its liens under a power of sale and bought the lots, to the extent of material furnished before recordation of University's deeds of trust; awarded Security a money judgment against University in a sum representing the value of materials furnished for improvements on the three lots before execution of the deeds of trust, and against purchasers of two of the lots for their respective shares of such sum; foreclosed the mechanic's and materialmen's liens on the three lots and directed issuance of an order for sale of the three lots to satisfy the judgment. The judgment against Wieghard Construction Company and Thomas A. Wieghard was by default.

The court of civil appeals reformed and affirmed the trial court's judgment. Security's mechanic's and materialmen's liens

were given priority over University's deed of trust liens to the extent of the value of all materials furnished for improvements on the three lots, both before and after. execution of the deeds of trust; a money judgment was rendered against University for the value of all such materials, and against the purchasers of the two lots for the value of all materials furnished for construction of improvements on their respective lots. Security Lumber Company v. Wieghard Construction Co., 413 S.W.2d 745. We affirm the judgment of the court of civil appeals.

A joint application for writ of error was filed in this court by University and the two lot owners, and a separate application was filed by Westmoreland. Both applications were granted. Westmoreland's application raises only one basic question, viz: Is there in the record evidence of probative force supporting that part of the trial court's judgment awarding Security a recovery of money for materials furnished? The application filed by University and the lot owners raises the same question as Westmoreland's application and two additional questions: (1) Is Security's right to assert the priority of and to foreclose its liens barred by the two-year statute of limitation? (2) Are Security's liens prior and superior, in whole or in part, to University's deed of trust liens? The questions will be discussed in the order in which they are listed.

The court of civil appeals held that the trial court's money judgment for Security is supported by evidence. The holding is based in large part on certain business memoranda or records of Security which were admitted in evidence over objections by the defendants who are petitioners here. Westmoreland contends that the records were not admissible under Article 3737e, Vernon's Ann. Texas Civil Statutes, the Business Records Act, and are therefore hearsay and incompetent to prove Security's claim. University contends that even if the records were admissible under the statute to establish Security's claim against the construction company, they were not admissible against it; that it was not the purpose of the statute to make a record of transactions with one person admissible in a suit against a third person who is not in position to disprove its accuracy.

Admissibility and competency of the business records as proof of Security's claim must be determined in the following procedural and factual context. Security's action was founded upon a sworn account as authorized by Rule 185, Texas Rules of Civil Procedure. Westmoreland filed a written denial, stating under oath that the account was not just or true, in whole or in part. As proof of the indebtedness, Security offered in evidence a large number of invoices and "delivery tickets."

The invoices are printed forms with blank spaces to be filled in showing to whom materials are sold, the quantity of materials ordered, the date of the order, the price of various materials included in the order and the total charge for all included materials. The first line of each of the invoices introduced in evidence contains this statement: "Sold to *Wieghard Construction Company* * * *" The words "Sold to" are printed and the words "Wieghard Construction Company" are written in with ink or a pencil. Each invoice contains a list of the materials ordered, the date of the order, the price of the various materials included in the order and the total charge for all included materials.

Security's president testified that the invoices were made in the regular course of business; that in the regular course of business an employee took the orders for the materials and wrote them down on cardboard "loading tickets" which were sent to employees whose duty was to load the materials for delivery; after the listed materials were loaded on trucks, the loading tickets were then returned to the office and from them other employees made up the invoices showing the sale to Wieghard Construction Company of the same mate-

rials as were listed on the loading tickets and the date of sale and delivery; another employee then checked the materials on the trucks against the invoices to make certain the orders were properly filled, and gave the truck drivers two copies of the invoices, one to be turned over to the purchaser upon delivery and the other to be signed by someone at the construction project and returned to the office as a "delivery ticket"; prices were then entered on the invoices and on fourth copies which were mailed to the construction company. Security's president also testified that the construction company was given a written quotation of prices before any materials were ordered.

Article 3737e provides:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business.

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility.

" * * * "

Under the provisions of the statute, the invoices were business memoranda and were properly admitted as competent evidence of acts or events included therein if their identity and mode of preparation in accordance with paragraphs (a), (b) and (c) of Section 1 were proved by a qualified witness even though the witness had no personal knowledge as to the various items or contents of the invoices. The president of Security was a qualified witness within the meaning and intent of the statute, and his testimony undoubtedly supports the implied finding of the trial judge that the invoices were made in the regular course of business and were made at or near the time of the recorded act or event or reasonably soon thereafter. The testimony of the president also supports a finding that it was the regular course of Security's business for an employee having personal knowledge that Wieghard Construction Company had ordered certain materials delivered to it to transmit that information to other employees for filling the order and, after the loading for delivery, thence to still other employees to be included in the invoices. The invoices were admissible in evidence and under Art. 3737e the entries therein are competent evidence that Wieghard Construction Co. had offered to buy the listed materials and Security had accepted the offer.

But Westmoreland argues that there are no entries in the invoices and no independent evidence tending to establish two essential elements of a sale, to wit: (1) that the prices charged were agreed to or were reasonable, and (2) that the materials were actually delivered to and received by the construction company. The answer to the argument is that there is ample independent evidence which will support a reasonable inference by the trial court of the existence of these two elements of a sale. Upon proof that in the regular course of

Security's business materials which were ordered were loaded on trucks for delivery and that the "delivery tickets" were returned to the office only after delivery of the loaded materials, the trial court was authorized to conclude from Security's possession of the delivery tickets that the ordered materials had been delivered. Also, proof that Wieghard was furnished a written quotation of Security's prices in advance, then ordered the materials, and was thereafter furnished a copy of the invoices with prices shown thereon, furnishes an evidentiary basis for a reasonable inference by the trial court that the prices shown on the invoices were agreed prices. The invoices are evidence only, and petitioners were not precluded from proving, if they could, that the prices charged had not been agreed to or that the materials had not been delivered. See generally Roy R. Ray, Business Records —A Proposed Rule of Admissibility, 5 Sw. L.J. 33.

As authority for its position, Westmoreland cites a number of court of civil appeals decisions in which the courts have held that there can be no recovery in a suit on a sworn account which is denied under oath in the absence of proof that the prices charged were agreed to or were reasonable and that the goods or materials were delivered to the person charged. We do not find it necessary either to quarrel with or separately to distinguish those cases. In none of them were business records, properly authenticated under Article 3737e, admitted in evidence to supply elements of necessary proof. Much emphasis is laid on a statement in the court's opinion in Love v. Travelers Ins. Co., 395 S.W.2d 682, 685 (Tex.Civ.App.—Texarkana 1965, writ ref'd n. r. e.) that "When the records are offered in evidence it must be under *pleading* [1] and *proof that they were made in the regular course of business at or near the time the act or event of* [or] *condition is recorded or reasonably soon thereafter.*" The statement is an obviously incorrect statement of the law. We expressly disapprove the holding that there must be *pleading* that business records meet the requirements of Article 3737e as a predicate for their admission in evidence. The notation on the new account card offered in evidence and excluded in North Texas Lumber Co. v. Kaspar, 415 S.W.2d 470 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.) was not shown to have been made by an employee with personal knowledge of the matter recorded and is not in point or persuasive.

We hold that the invoices were admissible in evidence and, with other facts and circumstances, constitute competent evidence supporting Security's money judgment against Wieghard and the guarantors of the debt. We need not decide whether the invoices alone would support the judgment. A sufficient answer to University's contention that business records should not be admissible against a litigant who was not a party to the business transaction is that the statute does not limit their admissibility to suits between the original parties to the business transaction. We would be reluctant to write the limitation into the statute when the Legislature could easily have done so if it had regarded it as wise. We accordingly hold that the invoices also were admissible in evidence and constitute competent evidence supporting Security's money judgment against University and its copetitioners.

Under Article 5467, Vernon's Texas Civil Statutes, Wieghard's debt to Security is deemed to have accrued on May 25, 1961, the date on which the last materials were furnished. Security filed its suit on August 2, 1962, well within the two-year limitation period. The only relief sought in the original petition was a money judgment against Wieghard Construction Company and the guarantors of its account. Relief establishing priority and ordering foreclosure of its liens was sought for the first time in a second amended petition filed on July 26, 1963, more than two years after

1. Emphasis ours throughout unless otherwise indicated.

the debt accrued. University and the lot owners were made defendants for the first time in the amended petition. In this fact situation, University and the lot owners contend that while the filing of the suit tolled the statutes of limitation as to Security's cause of action for its debt and foreclosure of its liens against Wieghard, it did not toll the statutes as to the cause of action to establish priority of the liens and for foreclosure against them. If we correctly understand their argument, they then contend that inasmuch as they were not sued on the cause of action to establish priority of Security's liens and to foreclose the liens as to them until more than two years after accrual of the cause of action on the debt, the cause of action against them was barred by the two-year statute.

■ The contention is novel and ingenious, and we can understand why neither party has cited us to any prior decision directly in point. We agree with the holding of the court of civil appeals that Security's cause of action for foreclosure of its liens as against University and the lot owners was not barred by the two-year statute of limitation. Security's suit on its cause of action for its debt was filed before the expiration of two years from the date on which the cause of action accrued. As pointed out by the court of civil appeals, the liens are incidents of and inseparable from the debt. West v. First Baptist Church of Taft, 123 Tex. 388, 71 S.W.2d 1090 (1934); Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447 (1920); Ball v. Hill, 48 Tex. 634 (1878); McAlpin v. Burnett, 19 Tex. 497 (1857). Since the cause of action for debt was not barred, neither was the cause of action to foreclose the liens. In this respect the position of University and the lot owners in the suit does not differ from that of Wieghard. They acquired their titles through foreclosure of the deeds of trust with constructive notice of Security's liens. If they had not been made parties to the suit and the suit had proceeded to judgment establishing the debt and foreclosing the liens against Wieghard, and thereafter a

controversy had developed between the purchaser at the judicial sale and University and the lot owners, the latter could not successfully have asserted the statute of limitation as a bar to the purchaser's rights against them. This is well settled by our decisions. See Hartel v. Dishman, 135 Tex. 600, 145 S.W.2d 865 (1940); King v. Brown, 80 Tex. 276, 16 S.W. 39 (1891); Paddock v. Williamson, 9 S.W.2d 452 (Tex. Civ.App.—Beaumont 1928, writ ref'd). The fact that they were made parties to the suit does not enlarge their rights.

This brings us to a consideration of the principal problem in the case, i. e., whether Security's statutory materialmen's liens are prior and superior, in whole or in part, to University's deed of trust liens. The opinion of the court of civil appeals indicates that its holding that Security's liens are prior and superior to the extent of the value of all materials furnished is based upon its conclusion that Wieghard and Security had entered into a special contract for the purchase and sale of all materials for the erection of the proposed improvements before any materials were delivered, and that Security's liens had their inception in and related back to this contract.

■ The record before us does not support a conclusion that a special contract of purchase and sale of all materials was entered into by Wieghard and Security before the first delivery of materials. The record reflects that Security merely quoted its prices to Wieghard and required guarantors of Wieghard's account for such materials as it might thereafter elect to purchase. Cf. Vaughan Lumber Co. v. Martin, 98 Tex. 80, 81 S.W. 1 (1904). We need not decide, therefore, whether in the absence of a general construction contract between an owner of land on the one hand and a building contractor on the other, the lien of one who supplies material pursuant to a special contract with an owner-builder will relate back to the date of the contract.

Security contends that even in the absence of a general construction contract or

a special contract for materials antedating recordation of a deed of trust, a materialmen's lien for all materials furnished, both before and after such recordation, relates back to the date on which materials were first furnished; that the lien given a supplier of materials by the mechanic's and materialmen's lien statutes is but one lien and its inception is in the first act of furnishing materials. Neither party has cited us to a case which is decisive of the question presented and we have found none in our research. The problem is primarily one of proper interpretation of the applicable statutes, not one of policy or of equities. For this reason, intermediate court decisions, discussed by the parties, which speak of the notice imparted to prospective lienors by the beginning of work on or delivery of materials for construction of improvements are neither controlling nor persuasive.

Article 5459 is one of the series of applicable statutes and controls priority. It provides:

"The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished or the work was done, in preference to any prior lien or encumbrance or mortgage upon the land upon which the houses, buildings or improvements, or railroad have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; *provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for.*" [2]

The statute plainly provides priority for mechanic's and materialmen's liens over all liens except those "on the land or improvement *at the time of the inception*" of the mechanic's or materialmen's liens. The controlling factor in determining the relative standing of such liens with other liens is thus *the time of inception of such liens.* The narrower question, therefore, is this: When did Security's liens have their inception? A brief review of the history of the applicable statutes and of our past decisions will be helpful in arriving at the correct answer.

Some form of security for claims of laborers and materialmen has been a matter of major concern in Texas since the days of the Republic. By an Act of the Congress approved in January, 1839, builders and mechanics with written contracts were given a lien on buildings and the land on which they stood, and an exclusive lien on improvements made by them, to secure their accounts for labor and material. 2 Gammel, Laws of Texas 66. Another Act of the Congress, passed in February, 1844, provided additional security for the payment of claims of laborers, materialmen and subcontractors, through retainages. The Statutes of the Republic were carried into the statutory law of the State by Art. XII, § 2 of the Constitution of 1845. 2 Gammel, Laws of Texas 1298.

Liens of mechanics and artisans upon chattels manufactured or repaired by them were made constitutional liens by Art. XII, § 47 of the Constitution of 1869. 7 Gammel, Laws of Texas 427. The constitutional lien provision was broadened to include materialmen and to give a lien on buildings by Art. XVI, § 37 of our present constitution, adopted in 1876. By an Act approved in November, 1871, liens were given on buildings and improvements and on lands connected therewith to secure payment of claims for labor, material, machinery, fixtures and tools furnished to erect any house improvement or to repair any building, or article, or improvement whatever. 7 Gammel, Laws of Texas 30. In 1876, the Legislature brought the lien security and the retainage security of mechanics and mate-

---

**2.** All Article references are to Vernon's Texas Civil Statutes.

rialmen who erected or repaired buildings or improvements into one act, and repealed all laws in conflict therewith. The act contained no reference to priorities. 8 Gammel, Laws of Texas 927.

All prior laws on the subject were codified in Articles 3164–3179, Chapter 2 of the Revised Statutes of Texas of 1879. There was no mention of priority in any of the Articles. Several of the Articles were amended in 1885. Liens were given to mechanics and materialmen for labor performed and material furnished to erect or repair buildings and improvements "under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or contractors." Other provisions made clear that a lien was to exist if a contract were verbal. Article 3171 provided: "The lien herein given shall attach to the buildings * * * in preference to any prior lien or incumbrance or mortgage upon the land * * *; *provided any lien, incumbrance or mortgage existing on the land or improvements at the time of the accrual of the lien herein provided for shall not be affected thereby * * *.*" 9 Gammel, Laws of Texas 683. By § 8 of an Act of the Legislature, approved in 1889, Article 3171 was rewritten, and the word "accrual" in the proviso emphasized above was changed to "inception." 9 Gammel, Laws of Texas 1138. The priority provisions of the Act of 1889 are now included in Article 5459, supra.

As early as 1886 this court held in Fagan & Osgood v. Boyle Ice Machine Co., 65 Tex. 324, 331, in language not to be misunderstood, that it was not the registration required by the law but the law itself which gave a mechanic's or materialmen's lien. Said the court: "The lien is the creature of the law; the registration provided for, preserves it * * *. The record of the contract * * * did not, therefore, newly encumber the property, but fixed and secured upon it an existing lien." *Fagan & Osgood* was cited in Trammell v. Mount, 68 Tex. 210, 4 S.W. 377, at 379 (1887), for this judicial dictum: "The lien of a mechanic, though not fixed before record of the contract or bill of particulars, when it is fixed, relates back to the time when the work was performed or the material furnished, and hence takes precedence of all claims to the property improved which have been fastened upon it since that time." To the same effect, see Keating Implement and Machine Co. v. Marshall Electric Light & Power Co., 74 Tex. 605, 12 S.W. 489 (1889). In Trammell v. Mount, there was no written contract between an owner on the one hand and a general contractor on the other to which the labor done was referable. The statutory lien was enforced to secure payment for labor done under a verbal contract between an owner and an artisan who agreed to build only the walls of a stone house. The court adopted a policy of liberal construction of the statutes for the protection of laborers and materialmen, and the lien was given priority over an attachment lien perfected after the labor was performed but before the artisan filed his bill of particulars as required by law.

The next case decided by this court having significant bearing on the question before us is Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652, 30 L.R.A. 765 (1895). A careful analysis of the opinion in that case is important in determining whether it disavowed the dictum of Trammell v. Mount or extended it further for the protection of mechanics and materialmen, and also in deciding whether and to what extent the interpretation there announced of the priority statute was later modified, if at all, in Sullivan & Co. v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901), and McConnell v. Mortgage Inv. Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280 (1957).

In Oriental Hotel Co. v. Griffiths, the relevant facts were: The Oriental Hotel Company began the erection of a hotel in August, 1889, and had completed and paid for the foundation prior to February 24, 1890. On February 24, 1890, the hotel company entered into a general contract with Griffiths to erect and construct the hotel

according to an architect's plans and specifications, and Griffiths began his work on April 4, 1890. On May 1, 1890, the hotel company executed a deed of trust to St. Louis Trust Company to secure the hotel company's bonds issued and sold to obtain funds to erect the hotel. When the hotel was completed, Griffiths had not been paid the full amount due under his contract and claims of certain others who had furnished labor and material after recordation of the deed of trust were unpaid. All perfected their liens as provided by statute. The mortgagee's opposition to the claims of priority of those who had no contracts was based upon the Trammell v. Mount dictum, that is, that these liens related "back to the time when the work was performed or materials furnished," and thus were secondary to the deed of trust liens.

In deciding the question presented, the court restated its policy of liberal construction of the statutes for the purpose of protecting laborers and materialmen and examined the problem in considerable depth. Because of the change in the wording of the priority proviso—"accrual" to "inception"—the court made several holdings, some of which are of particular significance here, to wit: (1) liens of laborers and materialmen, when perfected, will relate back to the date of their "inception"; (2) the date of "inception" is not necessarily the date on which the labor was performed or the material was furnished as per the dictum in Trammell v. Mount; (3) the date of execution of a contract for erection of a building or construction of an improvement is the date of inception of all liens for labor and material necessary to completion of the building or improvement. Accord: McConnell v. Frost, 45 S.W.2d 777 (Tex.Civ.App.—Waco 1931, writ ref'd). Even a casual reading of the opinion in Oriental Hotel v. Griffiths makes quite clear that the court *did not* hold (1) that to have priority over a deed of trust or other lien, a mechanic's or materialman's lien must have had its inception in a general

bilateral contract antedating recordation of a deed of trust or the date of perfection of such other lien; or (2) that when timely perfected as provided by statute, a mechanic's or materialman's lien for all labor done or material furnished will not relate back to the date when his labor was first performed or his material was first furnished. Neither were any such holdings made in Sullivan & Co. v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901), nor in the recent case, McConnell v. Mortgage Inv. Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280 (1957). In *Sullivan & Co.* the trial court and court of civil appeals gave priority to liens of materialmen who furnished material and machinery for erection of a mining plant *after* a deed of trust had been recorded. This court reversed, holding that the deed of trust lien was entitled to priority under the provisions of the statute. We rejected the idea that such liens had their inception when the owner *determined* to improve his property, and added: "The rights of the parties in this case are fixed by the statute, and cannot be disposed of upon any supposed equitable ground." In *McConnell*, we denied priority to mechanic's and materialmen's liens for labor done and material furnished *after* recordation of a deed of trust, and refused to relate them back to a date, prior to recordation of the deed of trust, when work which had been paid for was done toward erection of the improvements. We were not called upon to decide, and did not decide, that the lien of a mechanic or materialman will not relate back to the date when his first labor is performed or material is furnished for which payment has not been made. Indeed, the opinion in *McConnell* has been interpreted as reaffirming the rule of the dictum of Trammell v. Mount in this situation. See Florey, Priority of Mechanic's and Materialmen's Liens in Texas, 40 Texas L.Rev. 872, at 881 (1962).

On authority of the rule laid down in the dictum in Trammell v. Mount,

we conclude that Security's liens on the three lots had their "inception" in the first deliveries of materials to the three lots for erection of the improvements thereon, and that each of such liens had its inception before University's deed of trust was recorded. Once that conclusion has been reached, the judgment of the court of civil appeals giving priority to Security's liens to the full extent of the value of all materials furnished, both before and after recordation of the deed of trust, must be affirmed. By the express terms of Article 5467, Security's indebtedness is "deemed to have accrued at the date of last delivery of such material".[3] It has one lien securing the entire indebtedness as to each lot, not a series of liens securing separate debts. That is the clear meaning of Art. XVI, § 37 of the Constitution and of Articles 5452–5472 of the statutes. There is no provision in Article 5459 for breaking a single lien into segments, and no authority therein for holding that one segment of a lien is prior to a deed of trust lien and another segment is secondary thereto. There is, therefore, no basis in the statute for the trial court's judgment on this phase of the case. The entire lien is made prior or secondary by the statute. Giving the lien priority is in accord with our long-standing rule of liberal construction for protection of laborers and materialmen who by their contribution add to the value of the security for the deed of trust debt.

The judgment of the court of civil appeals is affirmed.

WALKER, NORVELL and HAMILTON, J., dissenting.

3. This Article was amended by Acts 1961, 57th Leg., p. 863, ch. 382 § 7, but the amendment does apply in this case.

1. In connection with Oriental, see, Sullivan & Company v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901), and McConnell v. Mortgage Investment Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280 (1957).

## DISSENTING OPINION

NORVELL, Justice.

Security Lumber Company's cause of action against Weighard Construction Company was founded upon a sworn account for materials furnished by Security Lumber to the Weighard Company at various times during the months of March, April and May of 1961. Apparently, there was no contract between the mentioned parties obligating the Weighard Company to pay a definite sum of money for specific materials, but the Weighard Company's liability was controlled by the orders for materials which were placed with Security Lumber from time to time. Any special agreement that the Weighard Company may have had with Security was not in the nature of a "general contract" such as that involved in Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652, 30 L.R.A. 765 (1895),[1] so that it cannot be said that there was a contract which constituted the "inception" of the materialman's lien. Such "inception" would then necessarily date from the time the materials were delivered upon the job site. Trammell v. Mount, 68 Tex. 210, 4 S.W. 377 (1887).[2] The record shows that three separate deliveries of materials were made to the three separate lots or job sites before the deed of trust securing the University Savings and Loan Association loan was filed for record on April 6, 1961. These deliveries took place on March 7, March 28 and April 3. After April 6, 1961, Security made three additional deliveries of materials on April 29, May 15 and May 25. In my opinion, Security's lien securing the reasonable values of the materials *before* April 6, 1961 was superior to the University deed of trust, but as to the

2. Trammell v. Mount contains language which seems to infer that delivery to the job site would not be essential if delivery were directed to another place by the owner or he refused to accept delivery. When the liens of others are involved, the soundness of this inference may be doubted. However, the question is not before us in this case.

reasonable value of the materials delivered after April 6 (on April 29, May 15 and May 25), I find no compulsion in the wording of the material lien statutes which requires us to hold that the lien or liens securing these amounts must come ahead of the deed of trust. In the absence of statutory wording compelling such result, I would not so hold. The greater good lies with the security of land titles and the certainty of financial obligations.

I think the trial court's judgment was correct and accordingly dissent from this Court's order affirming the judgment of the Court of Civil Appeals.