ASSOCIATES DEVELOPMENT CORPORATION, et al., Appellants,

v.

W. F. & J. F. BARNES, INC., Appellee.

No. 6268.

Court of Civil Appeals of Texas, Waco.

March 26, 1981.

Rehearing Denied May 7, 1981.

Jerry Nugent, Rinehart & Nugent, Austin, for appellants.

Lynda Beck Fenwick, Pakis, Cherry, Beard & Giotes, Inc., Waco, for appellee.

## OPINION

JAMES, Justice.

This is a venue case involving Subdivisions 5 and 29a of Article 1995, Vernon's Texas Civil Statutes. W. F. & J. F. Barnes, Inc. (Barnes), Plaintiff-Appellee, filed suit against Associates Development Corporation and Joseph F. Chesley, Defendant-Appellants, alleging causes of action based upon a verified account and quantum meruit, fraud, alter ego and sham corporation theories. Both Defendant-Appellants timely filed Pleas of Privilege which were heard on June 6, 1980. After such hearing the court overruled both Pleas of Privilege. For purposes of this appeal Associates Development Corporation will be referred to as "the Corporation".

Barnes brought suit against the Corporation and Chesley alleging causes of action based upon a verified account and quantum meruit, fraud, alter ego and sham corporation theories. Chesley is a resident of Travis County, Texas, and the Corporation is a resident of Williamson County, Texas. Both Chesley and the Corporation timely filed their Pleas of Privilege to have the suit transferred to the counties of their respective residences. Barnes controverted such pleas on the basis of Subdivision 5 of Article 1995 V.A.T.S. and Subdivision 29a of Article 1995 V.A.T.S.

On June 6, 1980, a hearing on the Pleas of Privilege was held, in which hearing John Nottingham, Vice President, Treasurer and Assistant Secretary of Plaintiff-Appellee W. F. & J. F. Barnes, Inc., was the only witness that testified for Barnes. Certain invoices were introduced through Nottingham as evidence of a contract between Barnes and the Corporation for the sale of certain goods. Such invoices were admitted over the objections of Appellants that a proper foundation had not been laid and Nottingham had no personal knowledge of the transactions involved. Nottingham testified that he was personally familiar with the invoices and that such invoices were kept in the ordinary course of business at Barnes Lumber Company. Later Defendant-Appellants stipulated that all of the invoices reflected material that was sold to the Corporation.

Nottingham testified that the invoices were prepared by Barnes' Lampasas lumber yard and showed sales to Associates Development Corporation. Although the personal guaranty of Defendant-Appellant Joseph Chesley was not part of the invoices, Nottingham testified that Chesley had represented to Barnes that everything he personally owned was available for paying the indebtedness owed Barnes.

The invoices provided that "at Seller's option all merchandise sold to the above named customer shall be payable in Waco, McLennan County, Texas." Defendant-Appellant Joseph Chesley testified that Barnes had asked Chesley to come to Waco to discuss resolution of his failure to timely pay this account. Two letters, one to each of the Defendant-Appellants, from the law firm retained by Barnes to accomplish collection, were offered as evidence that payment was demanded in Waco and were admitted over Appellants' objection that the witness, Nottingham, had no personal knowledge of them.

Nottingham related that Chesley, as President of the Corporation, entered into an agreement with Barnes that involved nine deeds of trust that attempted to provide a method of paying the account. Although Nottingham testified that Chesley never actually agreed individually to guarantee or pay the debt, Plaintiff-Appellee Barnes contends that his testimony clearly shows that Chesley made representations regarding the availability of personal assets to pay the debt owed Barnes. Barnes accepted the deeds of trust and agreed not to record them in reliance upon Chesley's promise to pay at the time of closing any job. Later, however, Barnes learned that the properties covered by the deeds of trust had been sold without Chesley advising Barnes of the sales and without payment having been accomplished as agreed.

The trial court entered its order overruling both Appellants' Pleas of Privilege and made findings of fact and conclusions of law which may be summarized as follows:

Defendants, acting by and through agents and/or employees, contracted in writing to purchase and pay for certain goods in accordance with the following terms: "At Seller's option all merchandise sold to above named customer, shall be payable in Waco, McLennan County, Texas." When written demand for payment was made upon both of the Defendants in the cause, such demand made separately to each, by Plaintiff's attorneys hired for the purpose of effecting collection of the amounts expressly agreed to be paid in the written agreements, demand for payment was again restated as being payable in Waco, McLennan County, Texas.

John R. Nottingham, who was Vice President, Treasurer and Secretary of Plaintiff, W. F. & J. F. Barnes, Inc., was personally familiar with the agreement of Plaintiff and Defendants and with the written documents evidencing same. Mr. Chesley represented to Plaintiff that Mr. Chesley had personal assets and income which could be utilized to pay the account which is the subject of this suit.

Chesley came to Waco to discuss a payment proposal and giving of security. The signatures on the invoices designating Waco, McLennan County, Texas, as place of payment were the signatures of Defendant Chesley's wife and two employees of Defendant Associates Development Corporation.

## CONCLUSIONS OF LAW

"Within the meaning of Subdivision 5 of Article 1995 of the Revised Civil Statutes of the State of Texas, Defendants contracted in writing to perform an obligation in McLennan County, and therefore, venue is proper in McLennan County."

"Associates Development Corporation and Joseph F. Chesley are both necessary parties to this suit."

Appellants are before this Court on the following points of error, to wit:

1. The trial court erred in admitting the invoices over hearsay objections because there was an insufficient business records foundation.

2. The trial court erred in admitting the attorneys' letters over a hearsay objection because the witness had no personal knowledge and could not identify the exhibits.

3. The trial court erred in overruling Appellants' Pleas of Privilege because:

a. There is no evidence and factually insufficient evidence to support any exception under Subdivision 5 of Article 1995.

b. There is no evidence and factually insufficient evidence to support any exception under Subdivision 29a of Article 1995.

We overrule all of Appellants' points and contentions and affirm the trial court's judgment.

By their first point, Appellants urge that the invoices admitted as Plaintiff's Exhibit One through Nottingham were inadmissible as hearsay since Nottingham did not personally prepare the invoices or personally participate in any of the transactions described in the invoices and could not properly authenticate them. Appellants contend that if the invoices were admissible at all, it was necessary that they be authenticated and proved up as business records pursuant to Article 3737e, V.A.T.S. They further claim that Barnes totally failed to establish the facts necessary to prove this exception to the hearsay rule.

Appellee Barnes claims that the invoices were properly admitted as they were proved up as business records under Article 3737e, V.A.T.S. Barnes further urges that any objection that Appellants might have had to the admission of these invoices was waived by their stipulation that the invoices reflected material that was sold to the Corporation. We agree with the Appellee and accordingly overrule Appellants' first point.

Article 3737e, V.A.T.S., in its pertinent parts provides:

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter."

"Section 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of

paragraph one (1) may be proved by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record. Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility."

The president of a company has been held to be such a "qualified witness" to testify as to identity and mode of preparation of invoices sought to be introduced as business records even though such witness had no personal knowledge as to the various items or contents of the invoices. *University Savings and Loan Association v. Security Lumber Company* (Tex.1968) 423 S.W.2d 287.

■ We feel that the holding in the *Security Lumber Company* case is applicable to the case at bar. Nottingham was Vice President, Secretary and Treasurer of Appellee Barnes. He testified that he was personally familiar with the invoices and that they were kept in the ordinary course of the business, and further that one of his responsibilities as Treasurer was to review such invoices. The invoices contained dates on them, and Nottingham testified that the invoices were instigated by the Lampasas lumber yard on merchandise sold to the Corporation. In view of the stipulation made later by the Appellants that such invoices reflected material that was sold to the Corporation, we feel there is ample evidence to support the finding of the trial judge that the invoices were proved to be business records pursuant to Article 3737e in that they were kept in the regular course of business and that it was in the regular course of business for an employee of Barnes to make such a record at the time merchandise was sold to Appellant; and even if there was not sufficient evidence of all these facts, any objection was waived by Appellants by their stipulation.

By their second point Appellants contend that the attorneys' letters to Appellants were improperly admitted, being hearsay testimony only, since Nottingham did not prepare such letters and could not personally identify them.

Barnes urges that Nottingham testified that as Vice President, Secretary and Treasurer of Barnes he was familiar with procedures used when a case was referred to Barnes' attorneys for collection, and that the letters in question were written by the attorneys at the time of referral. Barnes contends that by this testimony the requirements of Article 3737e were met.

■ It is apparent that these demand letters were sought to be admitted by Barnes for the purpose of showing that demand for payment was made in Waco, McLennan County, Texas in order to establish venue there under Subdivision 5 of Article 1995 V.A.T.S. However, the admission of these attorneys' letters is not material. There is nothing in the invoices that requires a written demand or any particular type or kind of demand. The fact remains that Barnes brought this suit in McLennan County, Texas, which is ample evidence that it (Barnes) had exercised its option to demand payment in McLennan County. See *Hermer v. Monnig Dry Goods Co.* (Fort Worth Tex.Civ.App.1934) 77 S.W.2d 895, 896, no writ. Therefore, the trial court's admitting of the attorneys' letters into evidence, if error, was harmless. Rule 434, Texas Rules of Civil Procedure.

By their third contention Appellants urge that the trial court erred in overruling their Pleas of Privilege as there is no evidence and factually insufficient evidence to support an exception under Subdivision 5 of Article 1995 V.A.T.S. In support of this contention they argue that the invoices contained the only evidence of any contract in writing requiring performance of an obligation in a particular county, and that such invoices were inadmissible. They further urge that even if the invoices were properly admitted into evidence that such invoices are not evidence of any demand for payment in Waco, McLennan County, Texas, since they merely stated that at the seller's option the invoices would be payable in McLennan County, Texas.

■ Appellee contends that the optionable language as to the place of payment contained in the invoices did not defeat Barnes' right to sustain venue in McLennan County under Subdivision 5 of Article 1995, because the contract language, albeit optionable, fixed a single certain place which might be designated by Barnes for place of payment. We agree with Appellee and accordingly overrule Appellants' third contention.

Although it is required by Subdivision 5 of Article 1995 that the contract to perform the obligation must be in writing and must expressly name the county or a place therein as the place for the performance of the obligation, Texas courts have held in similar cases that the optionable nature of the place of performance does not render inapplicable Subdivision 5 of Article 1995, V.A. T.S. *Mahler v. J. R. Watkins Co.* (Dallas Tex.Civ.App.1938, no writ) 120 S.W.2d 459; *J. R. Watkins Co. v. Webb* (El Paso Tex.Civ. App.1936, no writ) 97 S.W.2d 284, 285; *Hermer v. Monnig Dry Goods Co.* (Fort Worth Tex.Civ.App.1934) 77 S.W.2d 895, no writ.

By their fourth and final contention Appellants urge that the trial court erred in overruling their Pleas of Privilege as there is no evidence and factually insufficient evidence to support an exception under Subdivision 29a of Article 1995.

Mr. Nottingham by his testimony showed that Barnes placed great reliance on the promises and representations made by Chesley and on Chesley's personal financial worth as shown in the personal financial statement given to Barnes by Chesley. Chesley testified that he was the President of the Corporation, that the Corporation had closed its office and was operating out of Chesley's home and that Chesley owned at the time of the transactions involved here and at the time of the hearing 100% of the stock of the Corporation. Chesley even testified that when he said "I" he was in fact referring to the Corporation throughout his testimony. The evidence is clear that the Corporation was in severe financial difficulty at the time it was doing business with Barnes, and that Chesley was in full control, making arrangements with employees or relatives in regard to properties contained in the Deeds of Trust when the Bank started "pressing" him.

In support of their contention Appellants urge that Subdivision 29a is not applicable here as venue is not maintainable in McLennan County under any other subdivision of Article 1995. We have already decided above that venue is maintainable as to the Corporation in McLennan County under Subdivision 5 of Article 1995. Appellants further urge that Subdivision 29a is still not applicable even if venue may be maintained against the Corporation under Subdivision 5 in McLennan County because Chesley was not a necessary party to this suit.

Appellee Barnes contends that the trial court correctly ruled that both Chesley and the Corporation were necessary parties to this cause, arguing that Chesley is a necessary party in order that Barnes might secure full relief under its alter ego claim against Chesley as well as the Corporation for the indebtedness made the subject of this suit, and further that there were sufficient pleadings and proof to pierce the corporate veil and to regard the Appellants as one entity.

■ Subdivision 29a of Article 1995 provides that where there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto. A basic rule is that courts will not disregard the corporate fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations. *Bell Oil & Gas Co. v. Allied Chemical Corporation* (Tex.1968) 431 S.W.2d 336, 340. Where there is such a unity (between the individual and his corporation) that the sep-

arateness has ceased and the facts are such that an adherence to the fiction of the separate existence of the corporation would promote injustice, the corporate entity may be disregarded. *First National Bank in Canyon v. Gamble* (Comm.App.1939) 134 Tex. 112, 132 S.W.2d 100, 103, opinion adopted.

It appears from the record that there is ample proof that Chesley was the dominating force behind the Corporation, and that to adhere to the fiction of the corporate existence would promote great injustice in this situation. We therefore feel that there is legally and factually sufficient evidence to support the finding of the trial judge that both Chesley and the Corporation were necessary parties. Accordingly we hold that Subdivision 29a of Article 1995 is applicable to this case and venue is maintainable as to both Chesley and the Corporation in McLennan County. We therefore hold that the judgment of the trial court should be affirmed.

AFFIRMED.

HALL, Justice, concurring.

I concur in affirming the judgment. However, I would hold (1) that the admissibility of the invoices under 3737e was not established on the trial, but (2) this is immaterial because the invoices were proved by Chesley's testimony; and I would hold (3) that Chesley is not a "necessary party" to Barnes's suit against Associates within the meaning of Exception 29a of the venue statute, but (4) venue as to Chesley is nevertheless proper in the county of suit because it is proper there against Associates, and Associates is Chesley's alter ego.

It is my view that there is no evidence that reasonably soon after the invoices were allegedly executed by Associates they were transmitted to Barnes's records, in the regular course of Barnes's business, by an employee or representative who had personal knowledge of the fact of execution. Therefore, I would hold that requirements (b) and (c) of article 3737e (set forth in the majority's opinion) were not met. However, it is my view that Barnes's failure to prove the admissibility of the invoices under article 3737e is immaterial. Most of the invoices were signed on behalf of Associates by Kathy Klaener. Others were signed by Helen H. Chesley and W. A. Cody. Referring to the invoices, which he said he had seen, defendant Chesley identified "these people" who had signed the invoices, as follows: Klaener was "an employee or agent" of Associates, Cody was "also an employee of Associates at the time," and Helen H. Chesley was Chesley's wife. It was during the course of this testimony that the attorney for Chesley and Associates stated to the court that "we will stipulate for the purposes of this hearing today that all of these invoices reflect material that was sold to Associates." I would hold that this testimony and the stipulation, together, sufficiently identified the invoices for their admission into evidence. I would also hold that the testimony and the stipulation support the implied finding (under Rule 299, Vernon's Tex.Rules Civ.Proc.) that Klaener, Helen Chesley, and Cody were clothed with apparent authority to sign the invoices on behalf of Associates.

Barnes's proof established its right to judgment against Associates, individually, for the full amount of the account sued upon, without the joinder of Chesley. Therefore, I would hold that Chesley was not a "necessary party" within the meaning of Exception 29a to Barnes's suit against Associates. *Friday v. Grant Plaza Huntsville Associates* (Tex.1980) 610 S.W.2d 747, 750. Barnes's attorney stated to us in oral argument that Barnes was not relying on Exception 29a to hold Chesley in McLennan County, but was relying upon the fact that Associates was Chesley's alter ego. I would affirm the judgment against Chesley on that theory. The evidence amply supports the implied finding that Associates is Chesley's alter ego. In other words, the invoices were executed on behalf of Chesley, and venue of Barnes's suit against him is therefore proper in McLennan County. The fact that Exception 29a has no application to this case is immaterial.